The Philadelphia and Reading Railroad Company, Plain-
tiff in error, *v.* Elias H. Derby.

Where a suit was brought against a railroad company, by a person who was injured
by a collision, it was correct in the court to instruct the jury, that, if the plaintiff
was lawfully on the road, at the time of the collision, and the collision and conse-
quent injury to him were caused by the gross negligence of one of the servants of
the defendants, then and there employed on the road, he was entitled to recover,
notwithstanding the circumstances, that the plaintiff was a stockholder in the com-
pany, riding by invitation of the President, paying no fare, and not in the usual
passenger cars.

And also, that the fact that the engineer having the control of the colliding locomo-
tive, was forbidden to run on that track at the time, and had acted in disobedience.
of such orders, was no defence to the action.

A master is liable for the tortious acts of his servant, when done in the course of his
employment, although they may be done in disobedience of the master's orders.

·· This case was brought up, by writ of error, from the Circuit
Court of the United States for the Eastern District of Penn-
sylvania.

It was an action on the case brought by Derby, for an injury
suffered upon the railroad of the plaintiff in error.

The declaration, in ten counts, was, in substance, that on the
15th day of June, 1848, the defendants, being the owners of the
railroad, and of a certain car engine called the Ariel, received
the plaintiff into the said car, to be safely carried therein, upon,
and over the said railroad, whereby it became the duty of the
defendants to use proper care and diligence that the plaintiff
should be safely and securely carried, yet, that the defendants,
not regarding their duty in that behalf, conducted themselves so
negligently by their servants, that, by reason of such negligence,
while the car engine Ariel was upon the road, and the plaintiff
therein, he was precipitated therefrom upon the ground, and
greatly injured. Defendants pleaded not guilty.

On the 22d of April, 1851, the cause came on to be tried, and
the evidence was, in substance, as follows :

In the month of June, 1848, the plaintiff, being a stockholder
in the said railroad company, came to the city of Philadelphia,
for the purpose of inquiring into its affairs, on his own account
and as the representative of other stockholders. On the 15th
of June, 1848, the plaintiff accompanied John Tucker, Esq., the
President of the said company, over the railroad, for the purpose
of viewing it and the works of the company.

They proceeded in the ordinary passenger train of the com-
pany, from the city of Philadelphia, (the plaintiff paying no
fare for his passage,) as far as the city of Reading.

On arriving at Reading, the plaintiff inspected the machine-
shops of the defendants, there situate, and remained for that
purpose about half an hour after the departure of the passen-

ger train towards Pottsville, which latter place is about the distance of ninety-two miles from Philadelphia.

By order of Mr. Tucker, a small locomotive car engine, called the Ariel was prepared for the purpose of carrying the plaintiff and Mr. Tucker further up the road. This engine was not constructed, or used, for the business of the said defendants, but was kept for the use of the President and other officers of the company, their friends and guests.

On this engine, the plaintiff and Mr. Tucker, accompanied by the engineer and fireman, and a paymaster of defendants, proceeded, following the passenger train, until they reached Port Clinton, a station on the line of the railroad.

After leaving Port Clinton, when about three miles distant from it, going round a curve, the passengers on the Ariel saw another engine called the Lycoming, of which S. P. Jones was the conductor, approaching on the same track. The engineer of the Ariel immediately reversed his engine, and put down the break. Mr. Tucker, the plaintiff, and the fireman, jumped from the Ariel, to avoid the impending collision. After they had jumped, the engineer also left the Ariel, having done all he could do to stop it. The plaintiff, in attempting to jump, fell, and received the injury of which he complains.

The engineer of the Lycoming, when he saw the approach of the Ariel, reversed his engine and put down the break. He did not leave the Lycoming till after the collision. At the time of the collision, the Lycoming was backing. The engines were but slightly injured by it.

On the night of the 14th or the morning of the 15th of June, a bridge, on the line of the railroad above Port Clinton, was burnt. In consequence of this, one of the tracks of the railroad was blocked up by empty cars returning to the mines, and stopped by the destruction of the bridge. For this reason a single track only could be used for the business of the road between Port Clinton and the burnt bridge.

Lewis Kirk, an officer of the said company, (master machinist and foreman,) went on in the passenger cars from Reading, towards Pottsville, informing the plaintiff and Mr. Tucker, that he would give the proper orders to have the track kept clear for the Ariel. On arriving at Port Clinton he did give an order to Edward Burns, despatcher at Port Clinton, (an officer of said company, charged with the duty of controlling the starting of engines,) that no car should be allowed to go over the road until he the said Kirk returned.

This order was communicated in express terms by Burns to Jones, the conductor of the Lycoming. Jones replied that he would go, and would take the responsibility, and, contrary to

his orders, did go up the road towards the burnt bridge, and on his return met the Ariel, and the collision ensued, as above stated. Jones had the reputation of being a careful and competent person, no previous disobedience of orders by him had ever occurred, and he was discharged by the defendants immediately after the accident, and because of it.

On the trial the plaintiff below requested the court to charge the jury, —

I. That if the plaintiff was lawfully upon the railroad of the defendants at the time of the collision, by the license of the defendants, and was then and there injured by the negligence or disobedience of orders of the company's servants, then and there employed on the said railroad, the defendants are liable for the injury done to the plaintiff by such collision.

II. That if the defendants, by their servants, undertook to convey the plaintiff along the Reading Railroad, in the car Ariel, and while so conveying, him, through the gross negligence of the servants of the company then and there employed on the said railroad, the collision occurred, by which the plaintiff was injured, that the defendants are liable for the injury done to the plaintiff by such collision, although no compensation was to be paid to the company for such conveyance of the plaintiff.

III. That if the collision, by which the plaintiff was injured, was occasioned by the locomotive Lycoming, then driven negligently or in disobedience of orders upon the said road by J. P. Jones, one of the company's servants, then having control or command of the said locomotive, that the defendants are liable for the injury to the plaintiffs, caused by such collision.

And the counsel for the defendants below requested the court to charge the jury, —

1. That the damages, if any are recoverable, are to be confined to the direct and immediate consequences of the injury sustained.

2. That if the jury believe the plaintiff had paid no fare, and was passing upon the railroad of the defendant as an invited guest, in order to entitle him to recover damages he must prove gross negligence, which is the omission of that care which even the most thoughtless take of their own concerns.

3. That the defendants would be liable in damages to a passenger who had paid passage-money upon their contract to deliver him safely, for slight negligence, but to an invited guest, who paid no fare or passage-money, they will not be responsible unless the jury believe that there was not even slight diligence on the part of the agents of the defendants.

4. That the employer is not responsible for the wilful act of his servant.

Philadelphia and Reading Railroad Company *v.* Derby.

5. That if the jury believe that the conductor of the engine Lycoming wilfully, and against the express orders of the officer of the company communicated to him, by running his engine upon the track above Port Clinton, caused the collision, the defendants are not responsible for any injury or loss resulting from such wilful disobedience.

6. That if the jury believe that every reasonable and proper precaution was taken to have the track of the railroad clear for the passage of the Ariel, and collision ensued solely by reason of the wilful disobedience of the conductor of the Lycoming, and of the express orders duly given by an agent of the company, the plaintiff cannot recover.

7. That if the jury believe that the conductor of the Lycoming, and all the officers of the company in any wise connected with the collision, were carefully and prudently selected, and that the collision ensued and the injury resulted to the plaintiff, an invited guest, by the wilful disobedience of one of them to an order duly communicated, then the plaintiff cannot recover.

The learned Judge charged the jury as requested, on all the points offered by the plaintiff.

And the learned Judge charged on the first and second points offered by the defendants, as requested, and also on the third point of the defendants, with the explanation, that though all the other agents of the defendants acted with diligence, yet if one of the agents used no diligence at all, then the defendants could not be said to have shown slight diligence.

As to the fourth point, the learned Judge charged as requested by the defendants, with this explanation, that though the master is not liable for the wilful act of his servant, not done in the course of his employment as servant, yet if the servant disobeys an order relating to his business, and injury results from that disobedience, the master is liable, for it is his duty to select servants who will obey. The disobedience in this case is the *ipsa negligentia*, for it is not pretended by the defendants that the Lycoming was intentionally driven against the Ariel.

On the fifth, sixth, and seventh points of the defendants, the learned Judge refused to charge as requested.

The learned Judge further said, that it is admitted that the plaintiff was injured through the act of Jones, the conductor of the Lycoming, that the plaintiff was lawfully on the road by the license of the defendants; then, in this view of the case, whether he paid fare or not, or was the guest of the defendants, made no difference as to the law of the case.

The jury found a verdict for the plaintiff, and assessed the damages at three thousand dollars.

A writ of error brought the case up to this court.

It was argued by *Mr. Campbell* and *Mr. Fisher*, for the plaintiff in error, and *Mr. Binney* and *Mr. Wharton*, for the defendant in error.

The points made by the counsel for the plaintiff in error, were the following:

I. The plaintiff stood in such relation to the defendants at the time of the accident, that he cannot by law recover.

II. The plaintiff suffered no damage from any act with which the defendants are by law chargeable.

These propositions cover the whole case; yet it may be proper to direct the attention of the court to two others, which, although included in the latter, are made more specific by referring to the points and charge of the court.

III. That the learned Judge erred while affirming the third and fourth points of the defendants, in the explanation by which that instruction was accompanied. The points and explanations referred to, were,

3. That the defendants would be liable in damages to a passenger who had paid passage-money, upon their contract to deliver him safely, for slight negligence; but to an invited guest, who paid no fare, or passage-money, they will not be responsible, unless the jury believe that there was not even slight diligence on the part of the agents of the defendants.

4. That the employer is not responsible for the wilful act of his servant or agent.

The learned Judge charged as requested on the third point, with the explanation, that though all the other agents of the defendants acted with diligence; yet, if one of the agents used no diligence at all, then the defendants could not be said to have shown slight diligence.

The learned Judge also charged as requested on the fourth point with this explanation, that though the master is not liable for the wilful act of his servant, not done in the course of his employment as servant; yet, if the servant disobeys an order relating to his business, and injury results from that disobedience, the master is liable; for it is his duty to select servants who will obey. The disobedience in this case is the *ipsa negligentia*, for it is not pretended by the defendants that the Lycoming was intentionally driven against the Ariel.

IV. The learned Judge erred in refusing to charge as requested by the 5th, 6th, and 7th points of the defendants.

5. That if the jury believe that the conductor of the engine Lycoming wilfully, and against the express orders of the officer of the company, communicated to him, by running his engine upon the track above Port Clinton, caused the collision, the de-

Philadelphia and Reading Railroad Company v, Derby.

fendants are not responsible for any injury or loss resulting from such wilful disobedience.

6. That if the jury believe every reasonable and proper precaution was taken to have the track of the railroad clear for the passage of the Ariel, and the collision ensued solely by reason of the wilful disobedience of the conductor of the Lycoming, and of the express orders duly given by an agent of the company, the plaintiff cannot recover.

7. That if the jury believe that the conductor of the Lycoming, and all the officers of the company, in any wise connected with the collision, were carefully and prudently selected, and that the collision ensued, and the injury resulted to the plaintiff, an invited guest, by the wilful disobedience of one of them to an order duly communicated, then the plaintiff cannot recover.

I. The plaintiff stood in such relation to the defendants at the time of the accident, that he cannot by law recover.

The plaintiff was a stockholder of the defendants; he was on the road as an invited guest, and paid no fare; was not carried in the way of their business, nor in a car used for such purpose. He voluntarily left the passenger train at Reading, and took his seat in the Ariel, with full knowledge of the service to which it was devoted, and the character of the engine itself. He was himself the president of a railroad company.

Being no passenger, and not carried by the company, even gratuitously, in the way of their business, he was in the car and was carried as a stockholder and a guest.

What were his legal rights, and what the obligations of the defendants?

It was contended:

1. That no cause of action can arise to any person by reason of the occurrence of an unintentional injury while he is receiving or partaking of any of those acts of kindness which spring from mere social relations. No contract exists, and no such duty as can give a cause of action, is by law cast upon either party in such relation. Such was the position of the plaintiff.

Upon principles somewhat analogous to the one now presented it has been ruled, " Si un hoste invite un al supper, et le nuit esteant farr spent et luy invite a stayer la tout le nuit, fit soit apres robbe uncore le hoste ne serra charge pur ceo, car cest guest ne fuit ascur traveller. 1 Rolle's Abr. 3.

" And if a man set his horse at an inn, though he lodge at another place, that makes him a guest, for the innkeeper gains by the horse, and therefore that makes the owner a guest, though he be absent. Contra, if goods left there by a man, because the innkeeper hath no advantage by them." York v. Grenaugh, 2 Ld. R. 868.

" So where one leaves his horse at an inn, to stand there by agreement at livery, although neither himself nor any of his servants lodge there, he is reputed a guest for that purpose, and the innkeeper hath a valuable consideration, and if that horse be stolen, he hath an action upon the common custom of the realm. But, as in the case at bar, where he leaves goods to keep, whereof the defendant is not to have any benefit, and goes from thence for two or three days, although he saith he will return, yet he is at liberty, and is not a guest during that time, nor is the innkeeper chargeable as a common hostler for the goods stolen during that time, unless he make a special promise for the safe keeping of them, and the action ought to be grounded upon it." Greeley v. Clark, Cr. Jac. 188.

" For if a man be lodged with another who is not an innholder on request, if he be robbed in his house by the servants of him who lodged him, or any other, he shall not answer for it." Cayle's case, 4 Rep. 32.

"And therefore, if a neighbor who is no traveller, as a friend, at the request of the innholder, lodges there, and his goods be stolen, &c., he shall not have an action." Cayle's case, Id. 33.

The principles on which rights and obligations, arising from particular relations, are founded, are stated by Shaw, C. J. in Farwell v. Boston & Worcester Railroad Co. 4 Metcalf, 58.

And it may be proper to refer to that class of cases based upon the principle, that unless the parties met upon the terms of contract, none can be inferred, or, in the words of Mr. Justice Williams, in Davies v. Davies, (38 Engl. C. L. R. 46,) that the evidence must show " that the parties came there on the terms that they were to pay and be paid, but if that was not so, there can be no *ex poste facto* charge made on either side."

And to the same effect are the actions brought upon claims for services rendered, when the relations of the parties do not justify the inference of contract. Strine v. Parsons, 5 Watts & S. 357. The case of a woman who lived with the decedent (whose estate was sued) as his wife. Walker's Estate, 3 Rawle, 343. An action by a son for services rendered after he arrived at full age. And also Candor's Appeal, 5 Watts & S. 216; Hacks v. Stewart, 8 Barr, 213.

2. The plaintiff, being a stockholder as well as guest, and availing himself of an opportunity to inspect, for his own interest as for that of others, the line of the road, their shops, &c., he cannot, by reason also of this relation, recover.

He was in the car, as already stated, as a stockholder, and not carried by the company in the way of their business, but for his own benefit, and for the interest of other stockholders whom he represented, and for whom he was acting as agent. No contract

was entered into with him, and he occupied, in this regard, no other relation than any other officer or agent of the company or coproprietor of the road.

One agent injured by another agent, cannot recover from their common principal. Farwell v. Boston & Worcester Railroad Co. 4 Metcalf R. 49; Brown v. Maxwell, 6 Hill, 592; Murray v. South Carolina Railroad Co. 1 McMullan, 385; Coon v. Railroad Co. 6 Barbour, 231; Priestly v. Fowler, 3 Mees. & Welsb. 1.

If the defendant in error owned half the stock of the road, or being so the owner, the company was unincorporated, (its charter cannot affect this relation,) or if the charter had created an individual liability in the shareholders, what duty did the law impose upon the other proprietors towards him, while he was on the road by their license, without compensation, to inspect its condition for his own benefit? It is submitted he went there like any other tenant in common, or joint proprietor, without right to claim against his coproprietors for the negligence of any of their common servants.

II. The plaintiff suffered no damage from any act with which the defendants are by law chargeable.

The gist of the action is, the neglect by the servant of the defendants of some duty imposed upon them by law, for which negligence they are sought to be held responsible.

1. It is first to be observed, that this liability of the defendants, if any, is not affected by their corporate character, and if under like circumstances an individual would not be liable, a corporation will not.

"A corporation will be liable for an injury done by its servants, if under like circumstances an individual would be responsible." The First Baptist Church v. Schenectady & Tr. R. R. Co. 5 Barb. Sup. Ct. Rep. N. Y. 79. "Indeed the same rule should be applied to a corporation as should be applied to an individual who carries on a business solely through the medium of agents and servants." Pratt, J., Coon v. The Utica R. R. Co. 6 Barb. S. C. R. 231; Philadelphia R. R. Co. v. Wilt, 4 Wharton; R. 146.

"The power and duty of an engine driver must be the same, simply as such, whether he be employed by a corporation or a joint stock company, or an ordinary partnership, or an individual. The driver appointed by a corporation, or company, or partnership, carrying on the business of carriers of passengers or goods, must, as such, have the same duties and powers." Per Parke, B. 3 Welsby, H. & G. 277; Con. v. R. R. Co.

2. That an individual would not, under the facts in this case, have been liable, is, it is submitted, clear, from the following

authorities, and the principles upon which the decisions are based:

"A master is chargeable with the acts of his servant, but when he acts in the execution of the authority given him by his master, and then the act of the servant is the act of the master." Per Holt, C. J., Middleton v. Fowler, 1 Salk. 282.

"In civil matters, to render one man amenable for another's misconduct, it must ever be established that the latter, in committing the injury, was all the while acting under the authority, and with the assent, express or implied, of the former." Hammond's Nisi Prius, 80.

"Hence it is, that the principal is never liable for the unauthorized, the wilful, or the malicious act or trespass of the agent." Per Story, J., Princip. and Agt. § 456.

In McManus v. Crickett, Lord Kenyon cites these cases, as illustrating the rule:

"If my servant, contrary to my will, chase my beasts into the soil of another, I shall not be punished."

"If I command my servant to distrain, and he ride on the distress, he shall be punished, not I." 1 East, 106.

"In order to render a master liable for a trespass committed by the servant, it is necessary to show that the acts were done while the servant was acting under the authority of the master. . . . To render him liable, it must be shown that the commission of the trespasses was in the execution of his order, or with his assent or approbation." Per Waite, J., Church v. Mansfield, 20 Conn. 287.

In Armstrong v. Cooley, (5 Gill's Rep. 512,) it was said, by Treat, C. J., "Even when the act is lawful, the principal is responsible for the manner of its performance, if done in the course of his employment, and not in wilful violation of his instructions." Thus declaring that, in the latter case, he would not be liable.

"It should here be observed, that the ground of the principal's liability cannot be that he has selected an agent who is more or less unworthy, and placed him in a situation which enables him to become the instrument of mischief to his neighbor, because that would hold him responsible; not alone for the acts done by the other, in his capacity *quatenus* agent, but even for a wilful default." Ham. N. P. 81.

This principle is exemplified in the case next cited, which, with the following, it is submitted, rule the cause now before the court.

Joel v. Morrison, 25 Eng. C. L. Rep. 512. In this case, the plaintiff was knocked down by the defendant's horse and cart, then driven by one of his servants accompanied by another.

The defendant proved that his horse and cart were only in the habit of being driven out of the city, and did not go into the city (where the act happened) at all. Thesiger, counsel for the plaintiff, suggested that the defendant's servants might have gone out of their way, for their own purposes, or might have taken the cart at a time when it was not wanted for the purpose of business, and have gone to pay a visit to some friend. He was observing that, under these circumstances, the defendant was liable for the acts of his servants—but, per Parke, B., "He is not liable, if, as you suggest, these young men took the cart without leave."

Wilson v. Peverley, (2 N. Hamp. Rep. 548,) was an action on the case against the master. It appeared that, by the defendant's orders, a fire was set on his land, and the charge of it given to a hired laborer. That the defendant left home, directing the laborer, after setting the fire, to employ himself in harrowing other land in the neighborhood. That the laborer, after his master's absence, and before he commenced harrowing, carried brands from that fire into the ploughing field, to consume some piles of wood and brush there collected, and on his way dropped some coals, from which another fire arose, and did all the injury complained of. That carrying fire from one field to another was dangerous, and was not in conformity to any express authority of his master; that the laborer was accustomed to work under the particular directions of his master, and could conveniently have harrowed, without first burning the piles of wood, though to burn them first is the usual course of good husbandry. A verdict was taken for the plaintiff, subject to the opinion of the court. Judgment was afterwards given for the defendant, and the Judge (Woodbury) said: "The next ground on which a master is liable for wrongs of his servant, is, that the wrongs are performed by the servant in the negligent and unskilful execution of business specially intrusted to the servant, but the principle does not reach wrongs caused by carelessness in the performance of an act, not directed by the master, as a piece of business of some third person, or of the servant himself, or of the master, but which the master did not, either expressly or impliedly, direct him to perform. . . . Thus, a piece of labor might be very properly performed at one time, and not at another; as, in this case, the setting of a fire in the neighborhood of much combustible matter. And if the master, when the fire would be highly dangerous in such a place, forbore to direct it to be kindled, and employed his servant in other business, it would be unreasonable to make him liable, if the servant, before attending to that business, went in his own discretion, and kindled the fire to the damage of third persons.

The master *quoad hoc*, is not acting in person, or through the servant, neither *per se*, nor *per aliud*, and the doctrine of *respondeat superior*, does not apply to such an act, it being the sole act of the servant."

It appears by the evidence, as applied to these rules:

1. Jones was not acting in execution of the authority given him by his master, the company, which is deemed essential by Lord Holt.

2. In committing the injury, he was not all the while, or at any time, acting under the authority, or with the assent of the company, things, says Hammond, ever to be established to make the principal liable.

3. His act was contrary to the will and express direction of the company, which, under the cases approved by Lord Kenyon, in McManus *v.* Crickett, would discharge the master from liability.

4. The company directed him to do one thing, and not to do another; yet, he did the latter, and did not do the former; therefore, according to the rule approved by Lord Kenyon, he, and not the company, is liable to the plaintiff.

5. His whole conduct was unauthorized by the defendants, who are, therefore, not liable, under the authority of Story and Waite, Js

6. His acts were "in wilful violation of his instructions," and, therefore, as stated in the opinion of Treat, C. J., the defendants are not liable.

7. He took and run the car "without leave," in which case, says Parke, B., the principal is "not liable."

8. Nor are the defendants liable because Jones was in the performance of a piece of business of the defendants, because they did not, either expressly or impliedly, direct him to perform it; and if, as Judge Woodbury said, it would be unreasonable to make the principal liable for an act done by the servant, without authority, but only on his own discretion, with what reason can the principal be made responsible for the wilful violation of his orders?

It is hence submitted, that the defendants are not by law chargeable with the damages resulting from the wilful and disobedient act of one of their servants, and that the second point is maintained.

(The argument upon the remaining points, is necessarily omitted.)

The points made by the counsel for the defendant in error, were the same ruled by the court below, and were stated as follows:

The three points made by the defendant in error, and affirmed by his honor, Judge Grier, who tried the cause, are found on the record. They are as follows:

I. That if the plaintiff was lawfully upon the railroad of the defendants, at the time of the collision, by the license of the defendants, and was then and there injured by the negligence or disobedience of orders of the company's servants, then and there employed upon the said railroad, the defendants are liable for the injury done to the plaintiff by such collision.

Two principles sustain this point.

I. That every person (or corporation) whose negligence or carelessness causes damage to another person, is *primâ facie* responsible to such person therefor.

II. That a corporation is liable to third persons for the damage done by its servants through negligence or disobedience of orders, in the course of their employment.

I. To the first principle, as an axiom of the law, it is not deemed necessary to cite authorities.

II. In support of the second, the authorities which follow are cited, the principles being first given as stated by eminent text-writers.

In Story on Agency, p. 465, ch. 17, § 452, the rule is laid down as follows:

" It is a general doctrine of law, that, although the principal is not ordinarily liable, (though he sometimes is,) in a criminal suit, for the acts or misdeeds of his agent, unless, indeed, he has authorized or coöperated in those acts or misdeeds; yet, he is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances or misfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize, or justify, or participate in, or, indeed, know of such misconduct, or even if he forbade them, or disapproved of them. In all such cases, the rule applies, *Respondeat superior;* and it is founded upon public policy and convenience; for in no other way could there be any safety to third persons in their dealings, either directly with the principals, or indirectly with him through the instrumentality of agents. In every such case, the principal holds out his agent as competent, and fit to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters of the agency." And in note 2, the learned author, in commenting upon a passage in 1 Blackstone's Comm. 432, adds, " for the master is liable for the wrong and negligence of his servant, just as much when it has been done contrary to his orders and against his intent, as he is, when he has coöperated in, or known the wrong."

"A master is ordinarily liable to answer in a civil suit for the tortious or wrongful acts of his servant, if those acts are done in the course of his employment in his master's service; the maxims applicable to such cases, being, *Respondeat superior*, and *Qui facit per alium, facit per se.* This rule, with some few exceptions, is of universal application, whether the act of the servant be one of omission or commission, whether negligent, fraudulent, or deceitful, or even if it be an act of positive mal-feasance or misconduct; if it be done in the course of his employment his master is responsible for it, *civiliter*, to third persons. And it makes no difference that the master did not authorize, or even know of the servant's act or neglect; for even if he disapproved of or forbade it, he is equally liable, if the act be done in the course of the servant's employment. Smith on Master and Servant, p. 152; Law Lib. Jan. 1852, p. 130.

"If a servant is acting in the execution of his master's orders, and by his negligence causes injury to a third party, the master will be responsible, although the servant's act was not necessary for the proper performance of his duty to his master, or was even contrary to his master's orders." Smith on Master and Servant, p. 157; Law Lib. Jan. 1852, p. 134.

The following authorities establish conclusively the principles above stated. Sleath *v.* Wilson, 9 Carrington & Payne, 607, (38 E. C. L. 249.)

If a servant, without his master's knowledge, take his master's carriage out of the coach-house, and with it commit an injury, the master is not liable; because he has not in such case intrusted the servant with the carriage. But whenever the master has intrusted the servant with the control of the carriage, it is no answer that the servant acted improperly in the management of it; but the master, in such case, will be liable, because he has put it in the servant's power to mismanage the carriage, by intrusting him with it. Therefore, where a servant, having set his master down in Stamford street, was directed by him to put up in Castle street, Leicester Square; but instead of so doing, went to deliver a parcel of his own, in the Old Street Road, and in returning along it, drove against an old woman, and injured her; it was held, that the master was responsible for his servant's act.

Mr. Justice Erskine states the law in the clearest manner. "Whenever the master has intrusted the servant with the control of the carriage, it is no answer that the servant acted improperly in the management of it. If it were, it might be contended that if a master directs his servant to drive slowly, and the servant disobeys his orders and drives fast, and through his negligence occasions an injury, the master will not be liable.

But that is not the law: the master, in such a case, will be liable, and the ground is, that he has put it in the servant's power to mismanage the carriage, by intrusting him with it."

The case of Joel *v.* Morrison, (6 Carrington & Payne, 501, 25 E. C. L. 511,) is to the same point,—but the servant in that case was acting against his master's implied commands, and not his express. The master was held liable. In Brown *v.* Copley, (7 Mann. & Granger, 566, 49 E. C. L. 566,) Sergeant Talfourd, *arguendo*, puts the case, previously put by way of illustration by Mr. Justice Erskine, in Sleath *v.* Wilson,— "As, if a coachman were driving his master, and were ordered not to drive so fast, but he nevertheless continued to do so, the master would be responsible for the injury." To which Mr. Justice Cresswell assents, saying,—"In that case, the coachman would still be driving for his master, though driving badly."

It is not pretended, in the present case, that Jones disobeyed the order given him, to attend to any private business of his own; he was still "driving" (his locomotive) "for his master," "though driving badly."

Nor did the damage ensue from the breach of the express order not to run up the railroad until the Ariel had passed. Jones ran his locomotive up the road without harming any one. It was on his return down the road that he encountered the Ariel.

And in Croft *v.* Alison, (4 Barn. & Ald. 590, 6 E. C. L. 528,) in an action for the negligent driving of the defendant's coachman, whereby the plaintiff's carriage was upset, it appeared that the accident arose from the defendant's coachman striking the plaintiff's horses with his whip, in consequence of which they moved forward, and the carriage was overturned. At the time when the horses were struck, the two carriages were entangled. The defendant was held liable for the damage caused by his servant's act, although wanton, as it was done in pursuance of his employment. And *per curiam*, "The distinction is this; if a servant driving a carriage, in order to effect some purpose of his own, wantonly strikes the horses of another person, and produce the accident, the master will not be liable. But if, in order to perform his master's orders, he strikes, but injudiciously, and in order to extricate himself from a difficulty, that will be negligent and careless conduct, for which the master will be liable, being an act done in pursuance of the servant's employment."

The third point of the defendant in error, and sustained by his Honor who tried the cause, is as follows:

III. That if the collision by which the plaintiff was injured

was occasioned by the locomotive Lycoming, then driven negligently, or in disobedience of orders, upon the said road, by J. P. Jones, one of the company's servants, then having control or command of the said locomotive, that the defendants are liable for the injury to the plaintiff, caused by such collision.

This point merely applies the general principles of the first point to the facts proved, and is virtually comprehended in it. It therefore needs no further notice.

The second point of the defendant in error, sustained by his Honor who tried the cause, is as follows:

II. That if the defendants, by their servants, undertook to convey the plaintiff along the Reading Railroad, in the car Ariel, and while so conveying him, through the gross negligence of the servants of the company, then and there employed upon the said railroad, the collision occurred by which the plaintiff was injured, that the defendants are liable for the injury done to the plaintiff by such collision, although no compensation was to be paid to the company for such conveyance of the plaintiff.

The principle of this point is identical with that of the second point presented by the plaintiffs in error themselves, and which was duly affirmed by his Honor in his charge, and the principle is in entire harmony with the third point of the plaintiffs in error, which was also duly affirmed by his Honor.

As both parties, therefore, seem to have agreed in their views on these points as presented as above to his Honor for adoption, and which were duly adopted by him, it can hardly be necessary to refer to the authorities on which the doctrine is based.

The leading case in point is that of Coggs v. Barnard, (Lord Raymond, 909,) the celebrated case under the law of bailments. The principle of that case is that, "If a man undertakes to carry goods safely and securely, he is responsible for any damage they may sustain in the carriage through his neglect, though he was not a common-carrier, and was to have nothing for the carriage."

This case has been commented upon with great ability, and at much length in 1 Smith's Leading Cases, p. 82, and the American authorities upon the point are collected by Messrs. Hare and Wallace, p. 227.

Mr. Smith states the general principle in these words, viz. "The confidence induced by undertaking any service for another, is a sufficient legal consideration to create a duty in the performance of it."

Among the numerous American cases affirming this principle, is Thorne v. Deas, (4 Johns. 84,) in which Chief Justice Kent

says, "If a party who makes this engagement," (the gratuitous performance of business for another,) "enters upon the execu-. tion of the business, and does it amiss, through the want of due care, by which damage ensues to the other party, an action will lie for this misfeasance."

A principle to which the defendant in error's second point also refers, is the liability of an unpaid agent for gross negligence only.

In the later cases, the English courts have found considerable difficulty in distinguishing with precision between negligence and gross negligence. In Wilson v. Brett, (11 Mees. & Wels. 113,) Baron Rolfe observes, "that he could see no difference between negligence and gross negligence; that it was the same thing, with the addition of a vituperative epithet."

And see Hare and Wallace's American note, p. 242, with the American cases there cited, and which are collected and commented on at much length, and the true principle stated, that any negligent conduct, which causes injury or loss, is actionable.

The defendant in error might perhaps have been entitled to ask the benefit of a rule less rigid in its bearing upon himself; but as the conduct of the railroad company in discharging Jones, the conductor, showed their own estimate of the grossness of the negligence in question, the defendant in error was content to ask the ruling of the point in its milder form, and the finding of the jury established the grossness of the negligence. The question of what is gross negligence being for the jury, see Storer v. Gowen, 6 Shepley, 174; Whitney v. Lee, 8 Metcalf, 91.; Angell on Carriers, p. 12.

Mr. Justice GRIER delivered the opinion of the court.

This action was brought by Derby, the plaintiff below, to recover damages for an injury suffered on the railroad of the plaintiffs in error. The peculiar facts of the case, involving the questions of law presented for our consideration, are these:

The plaintiff below was himself the president of another railroad company, and a stockholder in this. He was on the road of defendants by invitation of the president of the company, not in the usual passenger cars, but in a small locomotive car used for the convenience of the officers of the company, and paid no fare for his transportation. The injury to his person was caused by coming into collision with a locomotive and tender, in the charge of an agent or servant of the company, which was on the same track, and moving in an opposite direction. Another agent of the company, in the exercise of proper care and caution, had given orders to keep this track clear. The

driver of the colliding engine acted in disobedience and disregard of these orders, and thus caused the collision.

The instructions given by the court below, at the instance of plaintiff, as well as those requested by the defendant, and refused by the court, taken together, involve but two distinct points, which have been the subject of exception here, and are in substance as follows :

1. The court instructed the jury, that if the plaintiff was lawfully on the road at the time of the collision, and the collision and consequent injury to him were caused by the gross negligence of one of the servants of the defendants, then and there employed on the road, he is entitled to recover, notwithstanding the circumstances given in evidence, and relied upon by defendant's counsel as forming a defence to the action, to wit: that the plaintiff was a stockholder in the company, riding by invitation of the president—paying no fare, and not in the usual passenger cars, &c.

2. That the fact that the engineer having the control of the colliding locomotive, was forbidden to run on that track at the time, and had acted in disobedience of such orders, was not a defence to the action.

1st. In support of the objections to the first instruction, it is alleged, "that no cause of action can arise to any person by reason of the occurrence of an unintentional injury, while he is receiving or partaking of any of those acts of kindness which spring from mere social relations; and that as there was no contract between the parties, express or implied, the law would raise no duty as between them, for the neglect of which an action can be sustained."

In support of these positions, the cases between innkeeper and guest have been cited, such as 1 Rolle's Abr. 3, where it is said, "If a host invite one to supper, and the night being far spent, he invites him to stay all night, and the guest be robbed, yet the host shall not be chargeable, because the guest was not a traveller;" and Cayle's case, (4 Rep. 52,) to the same effect, showing that the peculiar liability of an innkeeper arises from the consideration paid for his entertainment of travellers, and does not exist in the case of gratuitous lodging of friends or guests. The case of Farwell v. The Boston and Worcester Railroad Company, (4 Metcalf, 47,) has also been cited, showing that the master is not liable for any injury received by one of his servants, in consequence of the carelessness of another, while both are engaged in the same service.

But we are of opinion, that these cases have no application to the present. The liability of the defendants below, for the negligent and injurious act of their servant, is not necessarily

founded on any contract or privity between the parties, nor affected by any relation, social or otherwise, which they bore to each other. It is true, a traveller, by stage coach, or other public conveyance, who is injured by the negligence of the driver, has an action against the owner, founded on his contract to carry him safely. But the maxim of "*respondeat superior,*" which, by legal imputation, makes the master liable for the acts of his servant, is wholly irrespective of any contract, express or implied, or any other relation between the injured party and the master. If one be lawfully on the street or highway, and another's servant carelessly drives a stage or carriage against him, and injures his property or person, it is no answer to an action against the master for such injury, either, that the plaintiff was riding for pleasure, or that he was a stockholder in the road, or that he had not paid his toll, or that he was the guest of the defendant, or riding in a carriage borrowed from him, or that the defendant was the friend, benefactor, or brother of the plaintiff. These arguments, arising from the social or domestic relations of life may, in some cases, successfully appeal to the feelings of the plaintiff, but will usually have little effect where the defendant is a corporation, which is itself incapable of such relations or the reciprocation of such feelings.

In this view of the case, if the plaintiff was lawfully on the road at the time of the collision, the court were right in instructing the jury that none of the antecedent circumstances, or accidents of his situation, could affect his right to recover.

It is a fact peculiar to this case, that the defendants, who are liable for the act of their servant coming down the road, are also the carriers who were conveying the plaintiff up the road, and that their servants immediately engaged in transporting the plaintiff were not guilty of any negligence, or in fault for the collision. But we would not have it inferred, from what has been said, that the circumstances alleged in the first point would affect the case, if the negligence which caused the injury had been committed by the agents of the company who were in the immediate care of the engine and car in which the plaintiff rode, and he was compelled to rely on these counts of his declaration, founded on the duty of the defendant to carry him safely. This duty does not result alone from the consideration paid for the service. It is imposed by the law, even where the service is gratuitous. "The confidence induced by undertaking any service for another, is a sufficient legal consideration to create a duty in the performance of it." See Coggs *v.* Bernard, and cases cited in 1 Smith's Leading Cases, 95. It is true, a distinction has been taken, in some cases, between simple negligence, and great or gross negligence; and it is said, that one who

41*

acts gratuitously is liable only for the latter. But this case does not call upon us to define the difference, (if it be capable of definition,) as the verdict has found this to be a case of gross negligence.

When carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. And whether the consideration for such transportation be pecuniary or otherwise, the personal safety of the passengers should not be left to the sport of chance or the negligence of careless agents. Any negligence, in such cases, may well deserve the epithet of "gross."

In this view of the case, also, we think there was no error in the first instruction.

2. The second instruction involves the question of the liability of the master where the servant is in the course of his employment, but, in the matter complained of, has acted contrary to the express command of his master.

The rule of "*respondeat superior*," or that the master shall be civilly liable for the tortious acts of his servant, is of universal application, whether the act be one of omission or commission, whether negligent, fraudulent, or deceitful. If it be done in the course of his employment, the master is liable; and it makes no difference that the master did not authorize, or even know of the servant's act or neglect, or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant's employment. See Story on Agency, § 452; Smith on Master and Servant, 152.

There may be found, in some of the numerous cases reported on this subject, dicta which, when severed from the context, might seem to countenance the doctrine that the master is not liable if the act of his servant was in disobedience of his orders. But a more careful examination will show that they depended on the question, whether the servant, at the time he did the act complained of, was acting in the course of his employment, or in other words, whether he was or was not at the time in the relation of servant to the defendant.

The case of Sleath *v.* Wilson, (9 Car. & Payne, 607,) states the law in such cases distinctly and correctly.

In that case a servant, having his master's carriage and horses in his possession and control, was directed to take them to a certain place; but instead of doing so he went in another direction to deliver a parcel of his own, and, returning, drove against an old woman and injured her. Here the master was held liable for the act of the servant, though at the time he committed the offence, he was acting in disregard of his mas-

Philadelphia and Reading Railroad Company *v.* Derby.

ter's orders; because the master had intrusted the carriage to his control and care, and in driving it, he was acting in the course of his employment. Mr. Justice Erskine remarks, in this case: " It is quite clear that if a servant, without his master's knowledge, takes his master's carriage out of the coach-house, and with it commits an injury, the master is not answerable, and on this ground, that the master has not intrusted the servant with the carriage; but whenever the master has intrusted the servant with the control of the carriage, it is no answer, that the servant acted improperly in the management of it. If it were, it might be contended that if a master directs his servant to drive slowly, and the servant disobeys his orders, and drives fast, and through his negligence occasions an injury, the master will not be liable. But that is not the law; the master, in such a case, will be liable, and the ground is, that he has put it in the servant's power to mismanage the carriage, by intrusting him with it."

Although, among the numerous cases on this subject, some may be found (such as the case of Lamb *v.* Palk, 9 C. & P. 629) in which the court have made some distinctions which are rather subtile and astute, as to when the servant may be said to be acting in the employ of his master; yet we find no case which asserts the doctrine that a master is not liable for the acts of a servant in his employment, when the particular act causing the injury was done in disregard of the general orders or special command of the master. Such a qualification of the maxim of *respondeat superior,* would, in a measure, nullify it. A large proportion of the accidents on railroads are caused by the negligence of the servants or agents of the company. Nothing but the most stringent enforcement of discipline, and the most exact and perfect obedience to every rule and order emanating from a superior, can insure safety to life and property. The intrusting such a powerful and dangerous engine as a locomotive, to one who will not submit to control, and render implicit obedience to orders, is itself an act of negligence, the " *causa causans* " of the mischief; while the proximate cause, or the *ipsa negligentia* which produces it, may truly be said, in most cases, to be the disobedience of orders by the servant so intrusted. If such disobedience could be set up by a railroad company as a defence, when charged with negligence, the remedy of the injured party would in most cases be illusive, discipline would be relaxed, and the danger to the life and limb of the traveller greatly enhanced. Any relaxation of the stringent policy and principles of the law affecting such cases, would be highly detrimental to the public safety.

The judgment of the Circuit Court is therefore affirmed.

Mr. Justice DANIEL dissents from the decision of this court in this cav ⅃, upon the ground that the said railroad company being a corporation, created by the State of Pennsylvania, is not capable of pleading or being impleaded, under the 2d section of the 3d article of the constitution, in any of the courts of the United States; and that therefore the Circuit Court could not take cognizance of the controversy between that corporation and the plaintiff in that court.

## Order.

This cause came on to be heard, on the transcript of the record, from the Circuit Court of the United States for the Eastern District of Pennsylvania, and was argued by counsel. On consideration whereof, it is now here ordered, and adjudged, by this court, that the judgment of the said circuit court, in this cause be, and the same is hereby, affirmed, with costs and interest until the same is paid at the same rate per annum that similar judgments bear in the courts of the State of Pennsylvania.