## TUCKER *v.* NEBEKER.

TORT; TREASURER OF THE UNITED STATES; DECEDENT'S ESTATES, INTERMEDDLING WITH; MUNICIPAL OFFICERS; LIABILITY OF MUNICIPALITY FOR TORTS OF ITS SERVANTS; STATUTE OF LIMITATIONS; ADMINISTRATION.

1. An action of tort is not maintainable against the Treasurer of the United States, for refusing to deliver to an administrator upon demand, certain money belonging to his decedent's estate, which was illegally turned over to the predecessor in office of the defendant by the District of Columbia, and placed by him, as *ex officio* custodian of the policemen's fund of the District, to the credit of such fund.

2. Nor is an action of tort maintainable by an administrator against one who in dealing with money belonging to the decedent's estate, confines himself to its conservation and preservation, and does not undertake to dispose of it or place it beyond the reach of its proper claimant.

3. If the officers of a municipality acting in their official capacity take charge of the estate of a decedent and retain it to await claim for it by its lawful owner, their action is not a tortious intermeddling with the estate; but if the estate is converted by them to the use of the municipality, and used for its benefit, they become liable in tort to any administrator, executor or other lawful claimant who may thereafter appear.

4. In such a case the act of its officers binds the municipality. Principals are responsible for the torts of their agents and employés committed within the scope of their duties; and especially so when they have received the pecuniary advantage resulting from the trespass, when the trespass is only technical and the substantial injury is the conversion of that of which the injured person has been deprived.

5. The statute of limitations does not begin to run against a claim on behalf of a decedent's estate until after letters of administration are granted.

6. In a suit by an administrator to recover money belonging to his decedent's estate, the propriety of the granting of the letters of administration, cannot be questioned. That is a question to be determined by the Orphans' Court which granted the letters.

No. 184.    Submitted December 15, 1893.—Decided February 5, 1894.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, holding a law term, in an action against three alleged joint tort-feasors, upon an agreed statement of facts. *Affirmed as to two of the defendants and reversed as to the other.*

The COURT in its opinion stated the case as follows:

This is a suit at common law, and comes to us on appeal from a judgment of the Supreme Court of the District of Columbia in special term upon an agreed statement of facts. This agreed statement of facts is in the following terms:

"The parties to this action hereby waive trial by jury, and agree to submit the issues herein to the court for its decision upon the following agreed statement of facts:

"That from the year 1882 to the summer of 1884 there lived in the Federal Building, in Washington, D. C., a man named David Patterson; that said Patterson died alone in his room in said building on or about July 1, 1884, intestate, and without leaving any next of kin, as far as known; that the coroner of the District of Columbia, who held an inquest as to Patterson's death, found upon the body of the deceased, the sum of $656.10, which he took possession of, and on or about the 19th day of July, 1884, turned over the same to the defendant Sylvester, as property clerk of the Metropolitan Police Force of said District, claiming to do so under the following general order of the Commissioners:

"'Office of the Commissioners,
"'Washington, July 22, 1879.

"'Dr. D. C. Patterson, Coroner, D. C.:

"'Sir: I am directed by the Commissioners to instruct you to turn over to the property clerk of the Metropolitan Police Force all money or property now in your possession as coroner, of deceased paupers and others, taking his receipt for the same.

"'Very respectfully,
"'WILLIAM TINDALL, Secretary.

"That Mr. Sylvester, the property clerk, on receiving said money gave the coroner a receipt therefor, and entered the same in a record in his office kept for that purpose. After having this money for six months, and no relative or creditor coming forward to claim it, the property clerk gave

notice by advertising in the newspapers of this city, that he had said money, and that it was taken from the body of David Patterson, and that if not claimed it would be deposited in the treasury of the United States to the credit of the policemen's fund. No one appearing, after this notice, to claim the money, it was, by the property clerk, Mr. Sylvester, in 1885, turned over to the Commissioners of the District of Columbia, who at that time were J. R. West, James B. Edmonds, and Garret J. Lydecker. The money was sent by the then Commissioners of the District of Columbia to Mr. Huston, the then Treasurer of the United States and ex officio custodian of the said policemen's fund, with other money, amounting in the aggregate to $831.12, on the 4th day of March, 1886, in an envelope marked 'For the Police Fund,' with no letter of transmittal and no information as to the sources from which the said Commissioners had received the same; and the said Huston gave a receipt for the same, specifying that it had been received on account of, and was to be credited to, 'the policemen's fund,' and on the 5th day of March, 1886, the said Huston caused to be entered in the book kept by him containing an account of said 'police fund,' the following entry, to wit: 'Treasurer of the United States to Metropolitan Police Fund, cash account, $831.12,' and there is no other entry on the books of account of said fund in relation to said money, and the defendant Nebeker never had any notice or knowledge where any of said money came from until the plaintiff's notice and demand upon him as hereinafter set forth.

"That after the receipt of said money by said Huston, 3.65 bonds of the District of Columbia were purchased with money belonging to said policemen's fund, including the said sum of $831.12, and such bonds were subsequently sold and the proceeds thereof disbursed on warrants drawn by the Commissioners of the District of Columbia in legal form. That said policemen's fund now consists of bonds of a similar character to those above mentioned, which were purchased with money belonging to said policemen's fund.

Said bonds are sold from time to time and the proceeds disbursed upon warrants drawn by the Commissioners. The amount of bonds now to the credit of the policemen's fund exceeds the amount of the plaintiff's claim.

"That on or about the 30th day of January, 1891, administration upon the estate of said David Patterson was granted to the plaintiff Tucker, on the petition of one Thomas Kurtz, alleging himself to be a creditor of the said Patterson to the extent of $100 for wages as his servant and attendant. The record and papers in the matter of the estate of said Patterson, No. 4264, administration docket of the Orphans' Court of the District, an abstract of which is hereto annexed, may be read as a part of this statement so far as they, or any portion thereof, may be considered by the court material and relevant to the issues raised by the pleadings herein.

"That demand was made in 1891, prior to the commencement of this action by the plaintiff, on the defendants for the said $656.10, and they and each of them refused to pay the same to the plaintiff.

"That the defendant Nebeker was appointed Treasurer of the United States April 27, 1891.

"And the cause is to be considered by the court as though the defendants, the District of Columbia and Richard Sylvester, had pleaded ' not indebted as alleged,' in addition to their other pleas. Each party reserves the right of appeal or any other remedy for review that he might be entitled to otherwise.

(Signed)                    " Franklin H. Mackey,
                            " Chas. Cowles Tucker,
                                        " Attys. for Plff.

                            " C. C. Cole,
                        " Atty. for Deft. Nebeker.
                        " S. T. Thomas,
            " Atty. for Defts. Dist. of Col. and Sylvester."

Upon the condition of things shown by this agreed statement of facts, the plaintiff, as administrator of the deceased,

David Patterson, instituted the present suit on July 27, 1891. The suit is claimed by the plaintiff to be a suit of trespass on the case. It contains three counts, not differing substantially from each other, each and all claiming from the three defendants the recovery of the sum of $656.10, with interest thereon from the 19th day of September, 1885, apparently the day on which the defendant Sylvester delivered the money to the Commissioners. The defendants all pleaded the general issue "not guilty," and the statute of limitations. The court below decided that the plaintiff was not entitled to recover, and rendered judgment accordingly. From this judgment the plaintiff prosecuted the present appeal.

. *Mr. Franklin H. Mackey* and *Mr. Chas. Cowles Tucker* for the appellant :

1. This action is not barred by the statute of limitations. No right of action vests in any person to recover the property of a decedent, of which wrongful possession was taken after the decedent's death, nor does the statute of limitations begin to run, before letters of administration are granted. *Fishwick* v. *Sewell,* 4 Harr. & John., 399 ; *Glenn* v. *Haslett's Admr.,* 7 Harr. & John., 24 ; *Smith* v. *Doe,* 33 Md., 442 ; *Ruff* v. *Brill,* 7 Harr. & John., 14 ; *Parker* v. *Fassett,* 1 Harr. & John., 204.

2. The act of the defendant Sylvester in parting with the decedent's estate to one not authorized by law to receive it; the act of the District of Columbia, a municipal corporation, by its officers, in turning over the decedent's estate to one having no right to administer it, and the act of the defendant Nebeker in retaining said estate after demand made upon him by the administrator, were each separate and distinct acts of conversion, for which the defendants are liable as joint tort-feasors. Cooley on Torts, pp. 448 *et seq. ; Thompson* v. *Currier,* 24 N. H., 237 ; *Pickering* v. *Coleman,* 12 N. H., 148. Thus, if an officer levies upon property which is exempt from execution, and proceeds to a sale of the same, the owner may treat this as a conversion. *Sanborn* v. *Ham-*

*ilton,* 18 Vt., 590. And a town officer who removes a quantity of fence from the land of its owner, mistakingly supposing it to belong to the town, is liable for the value in trover. *Smith* v. *Colby,* 67 Me., 169. And the vendor is equally liable whether he sells the property as his own, or as an officer or agent, and so is the party for whom he acts, if he assists or advises in the sale. *Billister* v. *Young,* 6 El. and Bl., 1 ; *Cooper* v. *Chitty,* Burr., 3 ; *Garland* v. *Carlisle,* 4 Cl. & F., 693; *Moore* v. *Eldred,* 42 Vt., 13; and *Calkins* v. *Lockwood,* 17 Conn., 155. If an officer arrest a thief who is in the possession of stolen property, the officer may take the stolen property and retain it for identification and evidence of ownership, and such taking and detention will not amount to a conversion (Cooley on Torts, p. 459); but if the officer unauthorizedly disposes of the property in such manner as to place it out of the reach of the real owner, such disposition of it will amount to a conversion. So, wherever a person intrusted with the goods of another puts them into the hands of a third person, without authority, it is a conversion. *Syeds* v. *Hay,* 4 T. R., 150, top paging; 1 Chit. Pl., 153; and *Lockwood* v. *Bull,* 13 Am. D., 539. That the defendant acted without fraud and in ignorance of the plaintiff's rights in disposing of the goods is no defense in an action of trover, nor is it a defense to say that the defendant acted under instructions from another who himself had no authority. *Everett* v. *Coffin,* 22 Am. D., 551; *Perkins* v. *Smith,* 1 Wils., 328; *Stephens* v. *Elwall,* 4 Mau. & Sel., 259; and 2 Phil. Ev., 121 *et seq.* Any one assuming to dispose of the effects belonging to a person deceased may be held responsible to the rightful personal representative in tort, or for a conversion of such goods, whether such representative receive his appointment before or after the conversion. *Manwell, Admr.,* v. *Briggs,* 17 Vt., 176. Intermeddling with the estate of a decedent by doing acts which an administrator alone may do, is tortious. 1 Williams on Exs., 296; *Wilson, Adm.,* v. *Hudson,* 4 Harring. (Del.), 168 ; *Howell* v. *Smith,* 2 McCord, 304 ; *Padgett* v. *Priest,* 2 T. R., 97.

3. The third question of law in the case at bar is whether *case* is the proper remedy. And here attention is called to the fact that no demurrer was interposed to the declaration in this case, and that the case is submitted on a case stated which has the effect of a special verdict; so that objections to the legal sufficiency of the declaration, which might possibly have otherwise been raised, have been aided by pleading over and by verdict. Stephen on Pl., 162; 1 Ch. Pl., 671, *et seq.* Of the action of case it may be said that it includes, in its widest sense, *assumpsit* and *trover*, and distinguishes a class of actions in which the writ is framed, according to the special circumstances of the case, from the ancient actions, the writs in which, called *brevia formata*, are collected in the *Registrum Brevium*. Bouv. Law Dict., " Case," p. 286; Chit. Pl., 146.

Trover would have been the proper form of action had it been possible for the plaintiff to have pointed out the specific pieces of money converted (1 Ch. Pl., 147, 148), but that being impossible, he resorted to the action of case, which includes, as has been seen, trover. Assumpsit was not brought because the plaintiff did not elect to waive the tort and sue in assumpsit, in which event he would have been compelled to sue the defendants separately because there is no *joint* promise to pay, express or implied. 1 Ch. Pl., 144, 209. That the action is well brought seems, from the authorities to be unquestionable. See Addison on Torts, p. 33, citing *Brewer* v. *Sparrow*, 7 B. & C. 310; *Lythgore* v. *Vernon*, 5 H. & N., 180; 29 Law J. Exch., 169; Broom's Legal Maxims, pp. 148, 154, and cases cited; Cooley on Torts, pp. 96, 191 ; *Lamine* v. *Bonell*, Ld. Raymond, 1216 (discussed in Cooley on Torts, p. 92) ; *Lockwood* v. *Bull*, 13 Am. D., 539 ; *Kelsey* v. *Griswold*, 6 Barb., 436.

*Mr. A. A. Birney*, United States attorney, for the Treasurer of the United States:

The agreed statement discloses two things, either of which is sufficient to defeat the suit as against the Treasurer.

1. The declaration is either in *trover* or in *detinue*. In either of these forms of action it is, of course, necessary to aver and prove that the defendant is or has been in possession of the particular goods. This was recognized by the pleader, who, in the first count, charged in Mr. Nebeker *present custody*, and in the others charged that he "received said money." The agreed case does not show that Mr. Nebeker, at any time, was in possession of this money or any part of it. It is shown that after the money passed into the hands of Treasurer Huston, in 1885, *he converted it* into bonds. It was *not left* as money to pass to his successor in office. These bonds were sold, and the whole sum disbursed on warrants of the Commissioners. While the date of disbursement is not given, it will be presumed to have been done by Mr. Huston. Since the whole fund disappeared from the Treasury *before Mr. Nebeker came into office*, how can he be charged with its wrongful *conversion* or *detention ?*

2. It is clear that this is indirectly a suit against the United States, and an attempt to get from the United States Treasury a fund which by statute can be paid out only upon warrant of the Commissioners of the District of Columbia. Sections 416 and 417, Rev. Stats. D. C., provide for a policemen's fund, to be formed from money derived from various sources. The act of July 1, 1882 (Rich. Sup. to Rev. St., p. 351) provides: " Sec. 3. That hereafter . . . all revenues of the District of Columbia shall be deposited in the Treasury of the United States . . . and shall be drawn therefrom only on requisition of the Commissioners of the District of Columbia," etc. The act of February 25, 1885 (Rich. Sup., p. 476), provides that the policemen's fund shall be " invested in United States or District bonds by the Treasurer of the United States, and be held by him subject to the drafts of the Commissioners for expenditures made in pursuance of law." Since it is, and always has been, illegal for the Treasurer to pay out of this fund except upon warrant of the Commissioners, how can he be charged with doing

a wrongful act by declining to honor the administrator's demand?

The Supreme Court has settled the question that an official of the United States cannot be held personally liable for non-payment of money held by him on behalf of the United States. Redress in such case is to be had by action against the United States, in the court provided for such actions. *U. S. ex rel. Angarica* v. *Bayard*, 127 U. S., 251; *Reeside* v. *Walker*, 11 How., 272; *U. S. ex rel. Goodrich* v. *Guthrie*, 17 How., 284; *Lamar* v. *McCullough*, 115 U. S., 163; *King's Co. Savings Inst.* v. *Blair*, 116 U. S., 200.

*Mr. S. T. Thomas*, attorney for the District of Columbia, and *Mr. A. B. Duvall*, assistant attorney, for the appellees, the District of Columbia and Sylvester:

The declaration in this case is somewhat peculiar in its form. It is either a declaration in trover or detinue, but whether it is one or the other, it was of course necessary to aver that the defendants the District of Columbia and Sylvester are, or had been, in possession of the money. The agreed statement of facts on which the case is to be tried, shows that the *District of Columbia* was never at any time in possession of the Patterson money or any part of it. The only fact according to the agreed statement showing Sylvester's connection with the money is that as *property clerk* he turned it over to *three gentlemen* who happened to be the Commissioners of the District, *at their request*, in 1885, and that those gentlemen handed the money over to *Mr. Huston*, who was then Treasurer of the United States, and *he* converted it into 3.65 bonds, which *he* placed to the credit of the " Policemen's Fund." But all this happened before the administrator of Patterson began this suit or made any claim to the money. The case is clearly an indirect attempt to recover a judgment against the United States, and thereby get from the Treasury a fund which can only be paid out on warrants by the Commissioners of the District for certain specified purposes. Sections 416-417 of the Revised Statutes

of the District of Columbia provide for a policemen's fund, to be formed from money derived from various sources therein specified. The act of Congress approved July 1, 1882, provides: "That hereafter . . . all revenues of the District of Columbia shall be deposited in the Treasury of the United States . . . and shall be drawn therefrom only on requisition of the Commissioners of the District of Columbia." The act of Congress approved February 25, 1885 (Rich. Supp., 476) provides that the Policemen's Fund shall be invested in United States or District of Columbia bonds, by the Treasurer of the United States, and be held by him subject to the drafts of the Commissioners for expenditures made in pursuance of law.

If the plaintiff's action is *detinue*, he cannot recover *money*. But even though money could be recovered in such an action, there is no evidence that the *District of Columbia* ever had Patterson's money. The distinction between *detinue* and *trover* seems to be, that in the former the plaintiff claims the specific recovery of goods and chattels detained from him by the defendant and damages for their detention, and the action lies though the defendant wrongfully parted with the goods before action brought. While in *trover*, damages *only* can be recovered for the *conversion*. But neither detinue nor trover lies for the recovery of *money*. *Ortan* v. *Butler*, 5 B. & Ald., 652. Nor can trover for a chattel be maintained unless a previous demand for its delivery be made by the plaintiff upon the defendant at a *time when the defendant had it in* his power to comply; otherwise, the refusal to deliver is no evidence of conversion. *Stewart* v. *Spedden*, 5 Md., 449.

Mr. Justice MORRIS delivered the opinion of the Court:

1. With reference to the defendant Nebeker, we fail to find in the agreed statement of facts any evidence whatever of tortious action. As Treasurer of the United States, duly appointed and qualified, he received from his predecessor in office the funds contained in the Treasury of the United

States, therein including the fund in controversy in this suit. If this fund had been improperly placed in the Treasury, or improperly received by the predecessor of Mr. Nebeker, the wrong was not his wrong; nor is it charged that he had any knowledge whatever of it. He received from his predecessor the contents of the treasury as the money of the United States, and that money he was allowed by law to disburse only "upon warrants drawn by the Secretary of the Treasury, countersigned by either Comptroller, and recorded by the Register, *and not otherwise.*" U. S. Rev. Stat., Sec. 305. Failure to perform his duty in this regard would have been a criminal offense under Section 5489 of the Revised Statutes. To permit him, upon the demand made upon him by the plaintiff, to determine that this fund had been improperly or improvidently deposited in the Treasury, and thereupon to withdraw it and deliver it to the plaintiff, would be to invest him with a most dangerous power, to say the least of it, and to subject him to criminal prosecution under the statute. We cannot regard as a tort that which the law requires as a public duty.

But we may go farther. We cannot regard as a tort the act of Mr. Huston, the predecessor of Mr. Nebeker, in receiving the money in question from the District of Columbia for the purpose for which it was delivered to him as Treasurer of the United States. He was required by law to keep and disburse, in accordance with law, all moneys delivered to him for the uses and purposes for which this fund was delivered. He knew nothing of the source from which the fund was derived; and it was not his duty to inquire. It was his duty to receive the money when delivered to him; and no more in this case than in the other can we regard that as a tort which the law requires to be performed as a duty.

2. In the second place, the agreed statement of facts fails to disclose any evidence of tort on the part of the defendant Sylvester. This defendant was an agent and employee of the District of Columbia, as was the coroner from whom he received the money in controversy. He was the officer of

the District charged with the custody and care of " all property or money alleged or supposed to have been feloniously obtained, or which shall be lost or abandoned, and which thereafter shall be taken into the custody of any member of the police force, or the police or criminal court of the District" (Rev. Stat. of U. S. for D. C., Sec. 409); and he received this money from the coroner in pursuance of a general order of the Commissioners of the District of Columbia, issued in 1879, as stated in the agreed statement of facts. It is unnecessary to determine whether this order was a sufficient warrant for him to receive this money, for the possession of the coroner was the possession of the District of Columbia; and the transfer by one agent of the District to another did not change the legal character of the possession, or convert the second agent into a wrongdoer. Moreover, we cannot assume that there was any tort at all, so long as the persons dealing with this money confined themselves to the duty of its conservation and preservation, and did not undertake to dispose of it or place it beyond the reach of any proper owner that might appear to claim it. Blackstone says: " If a stranger takes upon him to act as executor without any just authority, as by intermeddling with the goods of the deceased and many other transactions, he is called in law an executor of his own wrong, and is liable to all the trouble of an executorship, without any of the profits or advantages; but merely doing acts of necessity or humanity, as locking up the goods or burying the corpse of the deceased, will not amount to such intermeddling as will charge a man as executor of his own wrong." 2 Com., 507. Sylvester's act professedly and actually was merely an act of necessity, and a praiseworthy attempt to preserve the money for the real owner; and hence he is not liable to be charged in such a suit as the present.

3. It is somewhat different, however, with the District of Columbia. While the Commissioners of the District, acting in their official capacity for and on behalf of the District, did no more than take charge of this money by their agents

and employees and retain it to await claim for it by a lawful owner, their action could scarcely be considered a tortious intermeddling. But when they converted it to the use of the District, by causing it to be placed without warrant of law to the credit of a fund intended solely for the benefit of the District, and actually consumed it for the purpose for which that fund was intended, they incurred the risk of liability to any executor, administrator, or other lawful owner who should thereafter appear to claim it. That they had no warrant of law for their action, is apparent from the reading of the statute under which they pretended to act; for plainly it does not include money coming into the hands of the Commissioners or their agents in the manner in which this money came. The argument on their behalf indeed concedes this much; and only seeks to justify their course on the ground that the circumstances of this case were so very analogous to those in which they are authorized by the statute to pursue that course, that it was the best thing they could do. But, of course, no such argument as this can be allowed to prevail against the rights of the lawful owner of the money.

The act of the Commissioners in this matter bound the District of Columbia. They acted under color of their office; and the District had the benefit of the money. It is not an invariable rule that trespassers render only themselves liable for their wrong. Principals are responsible for the torts of their agents and employees committed within the scope of their duties; and especially are they liable when they have received the pecuniary advantages resulting from the trespass, when the trespass is only technical and the substantial injury is the conversion of the money of which the injured person has been deprived. Cooley on Torts, 127; Dillon on Municipal Corporations, Sec. 972; *Thayer* v. *Boston*, 19 Pick., 511; *Stockwell* v. *United States*, 13 Wall., 531; *R. R. Co.* v. *Derby*, 14 How., 468.

The statute of limitations was pleaded in this case, but was not pressed in the argument before this court. The plea is plainly untenable, inasmuch as when the trespass was com-

mitted, there was no person in existence competent to sue, and there has been no sufficient lapse of time for the bar of the statute to accrue between the date of the appointment of the administrator and the time of the institution of the suit. Wood on Limitations, Sec. 117, and cases cited in note.

The proceedings of the orphans' court in the matter of the appointment of the administrator are made part of the record in this case; and the agreed statement of facts purports to annex thereto a copy of them. No such abstract is found annexed to the printed record presented to this court; and we are unable to form any opinion in regard to the suggestion made in argument of the fraudulent character of the claim upon which the administration is based. The propriety of the grant of letters of administration could scarcely be considered in this case in any event. That is a question to be determined by the orphans' court which granted the letters, and is not subject to review in a collateral proceeding. Undoubtedly in the accounting by the administrator that court will carefully scrutinize the claim of a creditor who delayed so unconscionably long a time his petition for administration, and will scrupulously guard the interests of the United States, into the treasury of which it would seem that, under the statute of Maryland of 1798, Chap. 101, Subch. 11, Sec. 15, the residuum of this fund should go in default of relatives to take it. But we cannot here question either the propriety of the granting of letters of administration, or the validity of the claim of the creditor upon whose petition the administration was granted. *Kane* v. *Paul,* 14 Pet., 33.

*It follows from what we have stated, that the judgment of the court below as to the defendants Nebeker and Sylvester should be affirmed, with costs; and that the judgment as to the District of Columbia should be reversed, with costs; and that the cause should be remanded to the court below, with directions to enter a judgment upon the agreed statement of facts against the District of Columbia for the sum of $656.10, with interest thereon at the rate of six per centum per annum from the 4th day of March, A. D. 1886. And it is so ordered.*