STEVENS et al. v. CHAMBERLIN.

(Circuit Court of Appeals, First Circuit. February 2, 1900.)

No. 297.

1. MASTER AND SERVANT—FELLOW SERVANTS.

In a woolen mill employing from 250 to 300 persons, all of whom were under a superintendent, a machinist whose duty it was to make general repairs on the machinery and changes, when directed by the superintendent, who also had authority over the firemen, an assistant machinist, and helpers, all of whom he employed, but whose principal duties required him to work with his hands, was a fellow servant with another employé, whom he called to assist him in repairing a machine, and for his negligence, resulting in an injury to such other servant in the performance of the work, the master cannot be held liable.[1]

2. SAME—VOLUNTARY SERVICE.

Whether, in rendering the assistance required, the servant injured was acting within the scope of his employment or not is immaterial, so far as relates to the duty and obligations of the employer, which were the same towards a volunteer as towards a servant acting within his employment.

In Error to the Circuit Court of the United States for the District of New Hampshire.

Frank S. Streeter (Reuben E. Walker and Allen Hollis, on the brief), for plaintiffs in error.

Charles F. Stine and Edwin H. Shannon, for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. This is a writ of error brought to reverse a judgment rendered in behalf of Chamberlin, the defendant in error, against the plaintiffs in error. The case was tried to a jury, and the record brings up the whole proceedings at the trial. The only alleged error which we are to pass on is the refusal of the court to direct a verdict for the defendants below. No complaint is made of the other rulings of the learned judge who presided at the trial. All the facts which are needed to enable us to dispose of the issue before us are indisputable.

The plaintiffs in error were the owners of a mill engaged in the manufacture of woolen cloth. In the mill was a press, a heavy structure employed for pressing rolls of cloth. It was bedded in a pit in the floor of the mill. The bottom of the pit was slippery with oil oozing down from the press, and the pit was dark. A portion

---

[1] As to who are fellow servants, see notes to Railroad v. Smith, 8 C. C. A. 668; Railway Co. v. Johnston, 9 C. C. A. 596; and Flippin v. Kimball, 31 C. C. A. 286.

of this machine consisted of a heavy iron plate supported by two large press screws. These screws required repairs, and, when the defendant in error was injured, they were being taken out for that purpose. While they were being taken out, the heavy iron plate required temporary support, and, by reason of its great weight and its location in a dark pit with a slippery floor, the work demanded great care.

The work was done in behalf of the plaintiffs in error by one Mr. Streeter. He is called by the defendant in error the "master mechanic" of the mill. The evidence is that Mr. Dickson was the general superintendent of the mill, and had full charge over it everywhere; that Streeter was under his direction, and did whatever Dickson wanted done; that in making changes, or anything of that nature, he went to Dickson for directions; and that with reference to small, ordinary repairs he did not go to Dickson, but he always consulted him before doing anything else. The evidence also is that there were employed in the mill about 250 or 300 persons; that Streeter was sometimes called "boss machinist," and sometimes "master mechanic"; that he employed the help who were under him, although when he wanted a man he consulted the superintendent, and when a man did not satisfy him he would go to the superintendent, and thereupon the superintendent decided about discharging him; that he employed no persons except those under his orders; that altogether he had seven on his pay roll,—that is, under his orders,—three firemen, one teamster, one machinist, and two helpers; that his principal duties were to work with his hands, and to look after the men who were under him, and that about nine-tenths of the time he worked with his hands.

The defendant in error cannot be said to have had any experience in the particular work to which this case relates. He testifies that he was hired as a spare fireman, as a spare night watchman, to wheel the ashes out of the boiler room, to keep the lawn mowed and the yard clean, to sweep up the concrete walk, and to do the chores at the superintendent's house. It is claimed that at times he did lifting of timbers and work of that nature; but, of course, on this writ of error, we must accept this particular issue as he states it. His account of his being set at the work in which he was injured is as follows:

"Q. Where were you working on the 3d of December? A. Out in the yard, piling up old lumber. Q. If anybody called you, who was it? A. Mr. Streeter, the master mechanic. Q. What time? A. I think about ten o'clock in the forenoon. He says, 'Joe, we want you to come into the mill, and help fix' what they called the 'press.' It was broken down, 'and we are in a hurry about it, and I want to fix it as soon as possible, and want you to come in and help.' Q. Did you go in? A. Yes, sir; I did. I went in."

We think, therefore, if it had been important in the case, that the defendant in error would have been entitled to go to the jury on the questions of the nature of his employment, and whether or not the work in which he was injured was within its scope, and whether or not he had any experience in the class of work in which he was employed when injured, and, if yes, to what extent. Nevertheless,

in whatever way these particular issues might be determined by the jury, the result of litigation on the other indisputable facts shown in the record would not have been affected thereby. The rule is well settled that, so far as the obligations of an employer are concerned, they are fundamentally the same towards a volunteer as towards one acting within the scope of his employment. The authorities on this point are sufficiently stated in Bevin, Neg. (2d Ed.; 1885), at pages 826–828, and in Osborne v. Railroad Co., 68 Me. 49. The rule is laid down positively in Pol. Torts (4th Ed.; 1895), than which there is no higher authority. The learned author says, at page 93:

"Moreover, a stranger who gives his help without reward to a man's servants engaged in any work is held to put himself, as regards the master's liability towards him, in the same position as if he were a servant. Having of his free will, though not under a contract of service, exposed himself to the ordinary risks of the work, and made himself a partaker in them, he is not entitled to be indemnified against them by the master, any more than if he were in his regular employment."

Of course, there may be peculiar circumstances excepting the case from this general rule, as in Railroad Co. v. Fort, 17 Wall. 553, 21 L. Ed. 739; and, as there shown, the calling of a workman from the class of work on which he is employed to a new class of work, for which he was not employed, renders especially applicable the rule with reference to the proper warnings to be given by employers to employés. The case at bar, however, as we will explain, raises no issue of that nature.

In the progress of the work, Streeter, having removed one of the press screws, replaced it temporarily by a piece of three-inch plank set perpendicularly. In some way which the evidence does not make clear, this three-inch plank gave way, and the heavy plate in falling injured the defendant in error. It is admitted that the work might have been done with safety by the use of ordinary blocking in the place of a perpendicular shore, and there is no evidence that the material for such blocking might not have been found about the mill, while the presumption is that it would have been. Indeed, the evidence of the defendant in error, which we have cited, shows that at the very time he was engaged in piling up old lumber, which was presumably suitable for this coarse blocking, and it also appears that on a previous occasion the blocking for this purpose was at hand. Any question of this character, however, would relate to the obligation of the employer to furnish suitable materials for doing the work; and as to this there is neither any allegation in the declaration, nor any proof that the materials were not at hand, while, with reference to a charge of negligence in this behalf, the law is well settled that it rests with the employé injured both to allege and to prove that the employer was at fault.

There have been discussed at the bar all the various phases of the obligations of employers to employés. Aside from observing incidentally that, from the necessity of the thing, some of the subordinate rules which have thus been discussed, especially the rule with reference to the condition of the place where the work is to be done,

do not apply to repair or construction gangs, except in a much qualified way, as was shown with regard to construction in Armour v. Hahn, 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440, we do not find it necessary to consider those peculiar obligations; because, on the indisputable facts, the only negligence in this case which can be said to have been a causa causans, or to have contributed to the injury of the defendant in error, was the alleged fault of Streeter in not blocking up the plate, instead of using the perpendicular plank. The record, therefore, presents no question except whether or not Streeter and the defendant in error were co-employés with reference to the issue of negligence thus presented.

It should be observed that since the case was tried to the jury the supreme court has decided Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, Adv. S. U. S. 85, 44 L. Ed. ——, in a manner which clears up some questions which were before doubtful. There may, of course, be instances where the question whether or not different individuals are co-employés for the purpose of the issue in this case should be submitted to the jury for their determination on proper instructions from the court; but, on facts which are so far from dispute as those in the record at bar, the practice of the supreme court has been to dispose itself of that question, or to direct the circuit court to dispose of it, as a question of law, or as one not contestable on the proofs in the case. This was emphatically so in Railroad Co. v. Conroy, ubi supra. The only other cases relating to this point to which we need refer are Railroad Co. v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; Railroad Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 944; Martin v. Railroad Co., 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051; Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390.

In Mining Co. v. Whelan the suit was brought by a workman in the corporation's mine. The business of the corporation was divided into three departments,—the mine, the mill, and the chlorination works,—each of which had a superintendent who was under the general manager. In the mining department there were three shifts or gangs of workmen, and the negligence out of which the accident arose was that of the foreman of the gang in which the plaintiff was working. The court observed that whether or not the foreman had authority to engage and discharge men under him was immaterial, and that, even if he had such authority, he was none the less a fellow servant with those under him, "employed in the same department and under a common head." It is apparent that Streeter, in the case at bar, was no further removed from the defendant in error than the foreman in Mining Co. v. Whelan from the plaintiff below in that case, or than the conductor in Railroad Co. v. Conroy from the brakeman who was on the same train with the conductor, was subject to his orders, and was alleged to have suffered an injury through his negligence.

As to the main question in this case, it is useless to burden an opinion with citations from the state courts, where the views have been so conflicting, and the expressions of them almost innumerable; also, where so much has been said on this topic in the various

opinions of the several justices of the supreme court, speaking in behalf of that court, it would not be prudent to accept any particular expression as settling the law beyond what the case itself demanded. Nevertheless, it may well be maintained that the alleged rule of vice principal, so far as it concerns the relations of different persons employed by the same principal to accomplish a common result, has no proper recognition by the supreme court with reference to the issue in this case, as we have pointed it out. On the question of ·who are co-servants, it was said by Justice Brewer in Railroad Co. v. Baugh, 149 U. S. 368, 387, 13 Sup. Ct. 914, 37 L. Ed. 772, 781, as follows:

"If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but, if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor."

This expression, so far as it concerns the positive duty of the master, is limited and explained by what precedes it, relating to his obligations to provide suitable places, tools, and machinery, and to use reasonable care in warning his employés, and to other matters of that nature, all of which are admitted to be particulars with reference to which the master cannot relieve himself by deputizing others. None of these obligations, as we have said, applies to the case at bar, or to the allegations and proofs which the record presents. Except for those special obligations, the language of Mr. Justice Brewer implies a "personal wrong" on the part of the employer; that is to say, a wrong of a character which could not occur through the mere negligence of any individual deputized by the master in the special department of work in which the person injured is employed. These expressions of Mr. Justice Brewer were adopted and repeated by Mr. Justice White, at pages 264 and 265, 160 U. S., and pages 270, 271, 16 Sup. Ct., in Railroad Co. v. Keegan, ubi supra, and were carried forward by Mr. Justice Shiras into his opinion in Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, Adv. S. U. S. 85, 44 L. Ed. ——, already referred to. Thus, that the test as to who are co-servants turns rather on the nature of the service than on the relative rank of the different employés has received the express approval of three justices of the supreme court, if it is not to be accepted as determined by the court itself. Nowhere in the decisions of the court, or in the opinions of the various justices thereof, is this test contravened, except as implied in the dissent of a minority of the bench from the results reached. But the line of reasoning of Mr. Justice Shiras in his opinion in behalf of the court in Railroad Co. v. Conroy leads to even more positive conclusions. It was said in Bevin, Neg. (2d Ed.; 1895), at page 805, referring to the English and Scotch decisions:

"The tendency of these decisions is strongly towards including all grades of service, to the very highest, within the principle of nonliability in the case of common employment."

Pol. Torts (4th Ed.; 1895) lays down the English rule even more positively. After some discussion of the general principles and

scope of the rule, so far as the nature of employment is concerned, the learned author says, at page 92:

"It makes no difference if the servant by whose negligence another is injured is a foreman, manager, or other superior in the same employment, whose orders the other was, by the terms of his service, bound to obey. The foreman or manager is only a servant having greater authority. Foremen and workmen, of whatever rank, and however authority and duty may be distributed among them, are 'all links in the same chain.' "

The law in England was authoritatively declared, in 1868, in Wilson v. Merry, L. R. 1 H. L. Sc. 326. In Railroad Co. v. Conroy, Mr. Justice Shiras, at page 331, 175 U. S., page 85, 20 Sup. Ct., page 85, Adv. S. U. S., and page ——, 44 L. Ed., cites from the opinion of the lord chancellor, Lord Cairns, found at page 332, as follows:

"The master is not, and cannot be, liable to his servant unless there be negligence on the part of the master in that in which he, the master, has contracted or undertaken with his servant to do. The master has not contracted or undertaken to execute in person the work connected with his business. * * * But what the master is, in my opinion, bound to his servant to do, in the event of his not personally superintending and directing the work, is to select proper and competent persons to do so, and to furnish them with adequate materials and resources for the work. When he has done this, he has, in my opinion, done all that he is bound to do. And, if the persons so selected are guilty of negligence, this is not the negligence of the master."

This states the same rule as that given by Mr. Justice Brewer in Railroad Co. v. Baugh, just cited, and it fully affirms the law as laid down by Pollock, and as understood to be now held in England, and it is the only reference made by Mr. Justice Shiras to the English authorities on this precise point, and therefore it must be accepted as representing the English law as he understood it. Having thus shown that the English law does not recognize the so-called rule of vice principal with reference to the issue in this case, and that it certainly recognizes no distinction ordinarily arising out of different grades of service, Mr. Justice Shiras continues, at page 333, 175 U. S., page 88, 20 Sup. Ct., page 88, Adv. S. U. S., and page ——, 44 L. Ed.:

"Leaving the decisions of the state courts, and coming to those of this court, we find the latter to be in substantial harmony with the current of authority in the state and English courts. From this statement the case of Railroad Co. v. Ross 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787, must perhaps be excepted," etc.

Thereupon, in accordance with the directions of the court, Mr. Justice Shiras proceeds to overrule the case last referred to, so that, taking the whole opinion together, it must be accepted as a statement that the rule of the federal courts on the question before us conforms to the English rule as stated by Lord Cairns. Whether or not this is to be accepted as the conclusive adjudication of the supreme court to the extent stated by Mr. Justice Shiras, it is at least certain that there is nothing in the determinations of that court, as they are now to be summed up, which, in view of the evidently subordinate position of Streeter, can be regarded as excepting this case from the general rule of the obligations of the master arising out of the relations of co-servants working together at the same time and for the same purpose, while, on the other hand, there

is much to thoroughly discountenance any such exception, and the general drift is against it. Under these circumstances, the request to the court below to instruct the jury to return a verdict for the defendants below, now the plaintiffs in error, should have been granted. We may add that there is no rule of natural justice which holds an employer who is personally without fault liable in damages for the faults of others. The judgment of the circuit court is reversed, the verdict set aside, and the case is remanded to that court for further proceedings, and the plaintiffs in error are awarded the costs of appeal.