## WHITNEY v. NEW YORK, N. H. & H. R. CO.

(Circuit Court of Appeals, First Circuit. June 13, 1900.)

No. 329.

**1. APPEAL—REVIEW—VERDICT.**

A defendant in whose favor a verdict has been rendered by direction of the court is entitled to support such verdict upon any ground which the evidence in the record permits, and of which he has not by his conduct waived the right to avail himself. If, upon all the evidence, the verdict was one which must necessarily have been rendered, it must stand, regardless of the sufficiency of the particular ground on which it was directed.

**2. CARRIERS—INJURY OF PASSENGER—BURDEN OF PROOF AS TO NEGLIGENCE.**

The rule which requires an employé suing his employer for an injury to allege and prove the negligence upon which the right of recovery is based does not apply to a suit by a passenger against a common carrier, in which case the fact of the injury while the passenger was himself in the exercise of due care raises a presumption of negligence on the part of the carrier, which casts upon it the burden of proving the exercise of proper care, and that it used all appliances, readily attainable, known to science for the prevention of accidents.[1]

**3. SAME—WHO IS PASSENGER—EMPLOYE USING PASS.**

Plaintiff, being in the employment of defendant, a railroad company, changed to a different employment, still with defendant, and, in connection with the change, stipulated for free transportation to Boston from the city where he was to be employed, not in connection with his work, but for his own convenience. On one of these trips, made for his own purposes, and while not at work or going to or from his work, he was injured by the derailing of the car in which he was riding. He was traveling on a pass, similar to others which had been previously issued to him, stamped as an employé's pass, and containing on the back a waiver of all claims against the defendant arising from the negligence of its agents or otherwise. *Held*, that plaintiff was a passenger, and that an action to recover for the injury was governed by the rules applicable as between carrier and passenger, and not by those applicable as between master and servant, and the stipulations relieving the defendant from liability for negligence will not be enforced against the plaintiff, although he voluntarily assented to them.[2]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Edward H. Pierce, for plaintiff in error.

Charles F. Choate, Jr., for defendant in error.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

PUTNAM, Circuit Judge. This suit was brought by the plaintiff in error for an injury occurring to him while riding in a passenger train of the defendant in error. The circuit court directed a verdict for the defendant, and the plaintiff below thereupon sued out this writ of error. The record raises two questions: First, whether there was any case to go to the jury on the allegation of negligence; and,

[1] Burden of proof of negligence where passengers have been injured, see note to Railway Co. v Myers, 32 C. C. A. 23.

[2] Limitation of liability by carriers for injuries to passengers, see note to Clark v. Geer, 32 C. C. A. 301.

second, whether or not the plaintiff was a passenger. The only evidence offered in the court below was that in behalf of the plaintiff. At the close of that evidence a motion was made to direct a verdict for the defendant on the ground that no sufficient proof of defendant's negligence had been shown, which motion the court overruled. Thereupon the defendant moved that the court direct a verdict for the defendant on the ground that the plaintiff was an employé of the defendant when injured, and that he could not recover by reason of the fact of his riding on an employé's pass, by the conditions on the back of which the holder expressly assumed 'all risks arising from the negligence of the agents of the defendant, or otherwise, while using it. On that motion the court made a ruling favorable to the defendant, which appears in the record, and also it directed a verdict for the defendant. The exceptions were both to the ruling and to the order to return a verdict.

The bill of exceptions states, "All the evidence at the trial material to the exceptions in this case was as follows." Therefore it is presumable that the entire evidence is in the bill of exceptions, except what related to the question of damages, and possibly to some other questions about which there is now no dispute. Under the rulings, it is presumably the right of the defendant to support the verdict on any ground which the evidence in the bill of exceptions permits. This is a well-settled rule, expressly restated in Sullivan v. Mining Co., 143 U. S. 431, 434, 12 Sup. Ct. 555, 36 L. Ed. 214, where it is held that if, on all the facts in the case, the judgment was one which must necessarily have been rendered, it must stand. The same ruling was applied, under very peculiar circumstances, in Dry-Goods Co. v. Malcolm, 164 U. S. 483, 491, 492, 17 Sup. Ct. 158, 41 L. Ed. 524, where the basis for sustaining the judgment was altogether different from that which was expressly presented by the bill of exceptions. Of course, if it were apparent from the record before us that the defendant had rested its case in the court below entirely on the proposition that the plaintiff was an employé, or otherwise expressly or impliedly waived other defenses, or by its course had in any way blinded the plaintiff, so that it might be thought it had stopped him from putting in all the evidence of negligence that he might have put in, it could not have brought this question before this court for its consideration.

The injury happened through the overturning of a car in which the plaintiff was riding, at a switch near the approaches to the defendant's station at Boston. The effective cause of the overturning is not shown by the proofs. The plaintiff suggests three different explanations of the accident: One, that the switch was defective; second, that it was not provided with modern appliances for safety; and, third, that the switchman was personally negligent. The defendant offered no evidence in its own behalf, and did not even call the switchman, nor show reason for not calling him. It is well settled that, in a case brought by an employé against an employer, the employé is subject to the ordinary rule of the common law, that it rests on him to allege and prove that the injury arose from the negligence of his employer. This was so held by us in Stevens

v. Chamberlin, 40 C. C. A. 421, 100 Fed. 378, 380, and it is recognized as a well-known rule of law in Railway Co. v. Barrett, 166 U. S. 617, 619, 17 Sup. Ct. 707, 41 L. Ed. 1136. But, with reference to passengers, 'a necessity arises out of the fact that they are not presumed to have knowledge of the methods of particular carriers, and that to them the causes of injuries are inscrutable. The rule is best stated in Gleeson v. Railway Co., 140 U. S. 435, 443, 11 Sup. Ct. 862, 35 L. Ed. 463. There the decisions of the supreme court are referred to, wherein it is said to have been settled that the happening of an injurious accident is, in passenger cases, prima facie evidence of negligence on the part of the carrier, "and that, the passenger being himself in the exercise of due care, the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human foresight."

The nature of the duty resting on the defendant in this case with reference to the alleged absence of modern appliances was stated in Mather v. Rillston, 156 U. S. 391, 399, 15 Sup. Ct. 467, 39 L. Ed. 470. While, of course, no carrier can be held at fault, so long as he uses approved safeguards, merely because he does not always use those which theoretically or experimentally may attain better results, yet in that case the general rule laid down by the court was as follows:

"We think it may be laid down as a legal principle that, in all occupations which are attended with great and unusual danger, there must be used all appliances, readily attainable, known to science for the prevention of accident, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence."

In view of this, we think the case would justly have been left to the jury on the question whether the safeguard appliances referred to were available on the part of the defendant, if that question had been reached. Also, in view of the lack of proof offered by the defendant with reference to its switchman, we think the court would not have been justified in taking from the jury the question, if reached, whether the defendant had fully met the burden resting on it according to the rule in Gleeson v. Railway Co. So far as this part of the case is concerned, the ruling of the court below cannot be questioned.

Coming to the main issue, we are controlled with reference to it by the decisions of the supreme court. The only evidence, as we have said, was that of the plaintiff. The essential facts are not disputed, for the purposes of this writ of error; neither is there any substantial difference between the parties as to any question, except of law. The facts are, for this appeal, so similar to those in Doyle v. Railroad Co., 166 Mass. 492, 44 N. E. 611, 33 L. R. A. 844, that it is not maintained that, if that case controlled this court, the ruling of the circuit court could be supported. It is said, however, that we are not bound by the decisions of the supreme judicial court of Massachusetts on a question of this character, and such is the settled rule. Especially, matters arising out of the transportation of goods and passengers are so largely of an interstate character, as is this at bar, that uniformity of decision in the federal courts

becomes necessary; and this could not be accomplished if conclusive effect were given locally to local decisions, which, on questions of this nature, are often conflicting. Nevertheless, Doyle v. Railroad Co. seems to be governed by the same rules as those laid down by the supreme court.

The plaintiff claimed to go to the jury on the following alleged facts: Being in the employment of the defendant, he changed to a new employment, still with the defendant. In connection with the change of employment, he stipulated, not only for an increase of wages, but also for free transportation to Boston from the city where he was to be employed, for his own convenience, and not in connection with going to or from his work. He was injured while on one of these trips to Boston, and while not going to or from his work, and while he was not employed; that is to say, during the hours when he was free for recreation or to visit his family, or to use his time for any purpose of his own. He had received successive passes as each expired, all of them, so far as the case shows, having plainly stamped on the face that they were employés' passes, and on the back a waiver of all claims against the defendant arising from the negligence of its agents "or otherwise," sufficient to cover the case at bar, unless the same is controlled by the rules of public policy, and the decisions of the supreme court with reference thereto. The record does not expressly show that the plaintiff knew what appeared on the back of his passes, but, inasmuch as he had been for a long time an employé, the court would not have been justified in permitting the jury to find, on the evidence, that he did not know it.

The essential question is stated by the defendant as follows: It being established that the contract under which the plaintiff was being transported at the time of his injury was made at his own request, voluntarily, and with full knowledge of its terms and conditions, and it being a contract which the plaintiff was not entitled to receive except by mutual agreement, and which the defendant was not bound to grant except on conditions, does any public policy require it to be declared void? Subject to the caution not to draw from the words "at his own request, voluntarily," any inference contrary to what we have already said, this sufficiently explains the issue which the case raises. The question thus stated is on all fours with that answered in Railway Co. v. Stevens, 95 U. S. 655, 24 L. Ed. 535. It there appeared that Stevens was the owner of a patented car coupler, for the option and use of which the corporation, which was the plaintiff in error, was negotiating; that he went, at its request and expense, to a point on its railroad, to see one of its officers in reference to this matter, and a free pass was granted him; that the pass contained an indorsement, which for present purposes was substantially to the same effect as that on the pass in the case at bar; and that Stevens testified that he put the pass into his pocket without looking at the indorsement. There was a special finding that he did not know what was indorsed on the pass, but the conclusions of the court were made independently of this. It found, at page 658, 95 U. S., and page 536, 24 L. Ed., that the transportation of the plaintiff, although not paid for in money, was not

a matter of charity or gratuity, but was by virtue of an agreement in which the mutual interests of both parties were consulted; that the matter of mutual interest was a part of the consideration which the plaintiff consented to; that giving him a free pass did not alter the nature of the transaction; that the pass was a mere ticket to be shown to the conductor as evidence of his right to be transported; that it was not evidence of any contract that the plaintiff was to assume all the risks; and, what is the pith of the decision as applied to the case at bar, as appears at page 659, 95 U. S., and page 536, 24 L. Ed., that it would not have been valid if it had been. On page 660, 95 U. S., and page 536, 24 L. Ed., the court laid aside all question whether or not Stevens knew of the condition on the back of the pass, and said:

"But we have already shown that the carrying of the plaintiff from Portland to Montreal was not a mere gratuity. To call it such would be repugnant to the essential character of the whole transaction. There was a consideration for it, both good and valuable. It necessarily follows, therefore, that it was a carrying for hire. Being such, it was not competent to the defendant, as a common carrier, to stipulate for the immunities expressed on the back of the pass." "The defendant, being, by the very nature of the transaction, a common carrier for hire, cannot set up as against the plaintiff, who was a passenger for hire, any such estoppel or agreement as that which is insisted upon."

It is not necessary to examine at length the other decisions of the supreme court which are usually cited on this class of questions. It is sufficient to say that that court has firmly adhered to the rule of Railway Co. v. Stevens, both with reference to passengers and goods. It has not, however, passed directly on the question whether or not a carrier can lawfully stipulate for a release from the negligence of itself or its servants, with a person traveling on an absolutely free passage. In Railroad Co. v. Derby, 14 How. 468, 486, 14 L. Ed. 502, and in The New World v. King, 16 How. 469, 474, 14 L. Ed. 1019, the court held that the assumption of the custody of the person of one traveling gratuitously was sufficient to impose upon the carrier liability for the greatest diligence as to his safety. In those cases there was no stipulation against liability. In Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627, and in Railroad Co. v. Reeder, 170 U. S. 530, 18 Sup. Ct. 705, 42 L. Ed. 1134, it applied the rule of public policy to persons accompanying cattle on freight trains, although in the latter case it recognized the fact which we explained in Railroad Co. v. Nichols, 29 C. C. A. 500, 85 Fed. 945, 948, that a person traveling under those circumstances impliedly subjects himself to certain risks necessarily incident to freight trains and not incident to passenger trains, and that it might not be unreasonable to require him to specially stipulate accordingly. In Railway Co. v. Voigt, 176 U. S. 498, 20 Sup. Ct. 385, Adv. S. U. S. 385, 44 L. Ed. ——, the court held that stipulations between an express company and a railway company by which a messenger should release the railway company from liability for negligence might be valid; but the case is entirely exceptional, because the court had already decided, in Express Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791, that railway companies are not required by usage or by the common law to transport the traffic of an express company in the manner in which

such traffic is usually carried. Therefore it followed that an express company, in negotiating with a railway company for itself, its merchandise and employés, does not stand on the common public right, but only on such special contracts as the two parties may voluntarily enter into. Moreover, it appeared to the court that a messenger of an express company is not qua passenger, more than a vendor of petty articles on railway trains. Without analyzing the case further, it is clearly exceptional, and it in no manner impugns in the slightest degree Railway Co. v. Stevens, as is made especially plain by the reference to the latter case, at page 505, 176 U. S., page 387, 20 Sup. Ct., and page ——, 44 L. Ed.

The defendant urges on us the fact that the plaintiff had been previously in the employment of the defendant; but we are unable to see the pertinency of this, except so far as it would justify the court in assuming that the plaintiff knew the conditions indorsed on his pass. Whatever may have been his prior contract with the defendant, it is clear that, on the case as presented in this record, he was entitled to go to the jury on the proposition that the contract which controlled the parties at the time of his injury was new and independent.

Our attention has also been called to various cases relating to the liability of carriers to employés when passing between their homes and their places of labor. The supreme court has never passed on this particular phase; but it clearly raises an essentially different question from that at bar, because there is no injustice or legal inconsistency in holding that under some circumstances the going to or returning from work is, in the eyes of the law, an incident to the employment, if not a part thereof. As we have already said, the proofs on which the plaintiff was entitled to go to the jury entirely relieve the case of any proposition of this character. As in Railway Co. v. Stevens, he was at the time of his injury traveling in a passenger train, under a special arrangement which raised a valid consideration, and at a time and in relation to a matter which in no manner concerned his employment by the defendant. The only apparent difference in any particular is that the plaintiff was not traveling on an errand in which both parties were mutually interested, as Stevens was, but exclusively for his own purposes, precisely like any ordinary passenger. This difference tends to make his case clearer.

It is urged that the plaintiff was not paying his fare in money, and that he did not stand as one of the public ordinarily stands, in dealing with carriers, because his carriage was a part of an entire contract covering several elements, so that, therefore, both he and the defendant were at liberty to stipulate for such conditions as they might mutually agree upon. In this particular, however, the case of Railway Co. v. Stevens is essentially in point against the defendant. The defendant also urges that the line of reasoning in Railroad Co. v. Lockwood, which led to the conclusions of the court, embraces several propositions, among which are that of the general public interest in the safe carriage of persons, and that the imposition of conditions by a carrier amounts to an abdication of the essential duties of his employment; and it also presents other references to Railroad

Co. v. Lockwood, for the purpose of showing that, under the relations which the parties in the case at bar bear to each other, they were not within the precise reasons which led to the conclusions of the supreme court. We need not, however, follow through this line of argument, because the question is, what is the rule of law? and not, what are the various reasons out of which the rule was developed? These reasons change and fluctuate from time to time with the progress of events, or with the different views of different judges. The rule which governs this case, as we have already said, is expressly stated in Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627; and it is so firmly fixed, and has been applied in Railway Co. v. Stevens under circumstances so essentially like those at bar that we seem to be controlled by it, and by its application, as the rule and its application have each been determined by the supreme court. Under this rule, and under its application, the plaintiff below was qua passenger at the time of his injury, having given for his passage a valuable consideration, so that public policy will not permit us to enforce the stipulations indorsed on his pass, although he freely assented to them. So far as concerns any moral obligation growing out of those stipulations which it is claimed he now seeks to violate, the defendant must appeal elsewhere than to courts of law.

The judgment of the circuit court is reversed, and the case is remanded to that court, with directions to set aside the verdict and proceed thereupon in accordance with law; and the costs of this court are awarded to the plaintiff in error.