## DUNCAN v. MAINE CENT. R. CO.

(Circuit Court, D. Maine. February 7, 1902.)

No. 154.

### CARRIERS—INJURY TO PERSON RIDING ON PASS—ASSUMPTION OF RISK.

One riding on a pass, given without consideration, and after assent to conditions that he should assume all risk of accident and that the carrier should not be liable, cannot recover of it for injuries from negligence of its servants; and it is immaterial that the giving of the pass was a breach of the federal statutes in reference to interstate traffic.[1]

George E. Bird, William M. Bradley, and Philip Mansfield, for plaintiff.

N. & H. B. Cleaves and Stephen C. Perry, for defendant.

PUTNAM, Circuit Judge. This case comes before us on the general issue, accompanied with a brief statement of special matter of defense, as provided in the practice acts of Maine, followed by a demurrer by the plaintiff to the special matter.

The plaintiff was injured in a collision occasioned by the fault of the defendant's servants, and without corporate fault on the part of the defendant itself. At the time of the collision the plaintiff was journeying on the defendant's train on a free pass given him by the defendant at his own solicitation and request, without compensation, and accepted and used by the plaintiff as a pure gratuity, and on the conditions appearing thereon. The conditions, according to the force of the pleadings, were so far assented to and accepted by the plaintiff when he received the pass, and before he commenced his journey, that he thereby assumed all risk of accidents, and that he expressly agreed with the defendant that it should not be liable under any circumstances, whether by negligence of its servants or otherwise, for any injury while using the pass. In view of the pleadings, we have no occasion to recite the formal terms of the pass, or to consider the questions whether or not, or to what extent, an individual receiving a ticket from a common carrier is bound by any special notice appearing on it,—a class of questions very lately under consideration in The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039, and in The Kensington, 183 U. S. 263, 22 Sup. Ct. 102, 46 L. Ed. ——.

The plaintiff maintains that the giving of the pass was a breach of the federal statutes in reference to interstate traffic. It may well be questioned whether there is enough in the record to bring the case within those statutes, but, independently of this, there are several answers to the proposition: Of course, if the foundation of the right against a common carrier were contract, it would be apparent that, under familiar maxims of the law, no action would lie, because,

[1] Rights of person traveling on pass, see note to Chamberlain v. Pierson, 31 C. C. A. 164.

even though the plaintiff is not subject to any penalty imposed by the interstate commerce statutes, he would be in pari delicto. Indeed, he would be the party especially enjoying the benefit of the combination in violation of law. It is not, however, necessary to go into the question whether the fact that an action against a common carrier who has actually received into his custody a passenger or merchandise lies in contract, as well as in tort, establishes that the substantial relation is contractual, or whether the right against a carrier is fundamentally based on the "custom of the realm," as commonly said, precisely as a right against a public officer or a quasi public officer is so based, so that, in the absence of a bill of lading or its equivalent, the assumpsit arises only because it is implied from the acceptance of the custody of the passenger or the goods. It is the undoubted law that the maxims with reference to persons in pari delicto are not limited to causes ex contractu, and that no suit can be maintained whenever it springs from an illegal transaction to which the plaintiff was a party, and which transaction is necessarily a portion of his case. Pol. Cont. (6th Ed.) 363. In the present suit the plaintiff could not show that he was legally on the defendant's train, without exhibiting his pass in his pleadings or in his proofs. No exoneration or contribution between joint tort feasors, or between persons who have agreed together in violation of law, can arise out of the joint tort or the subject-matter of the agreement. But the case takes on even a more concrete aspect. Rejecting the pass as void, the plaintiff puts himself in the position of one who was on the train of the defendant without its permission, and without intention of paying the fare which would entitle him to be regarded as a passenger. The consequence, therefore, of the plaintiff putting himself in that position, is to leave him as an unauthorized intruder, and to place him outside of those rules of law which give protection against the mere negligence of the servants of a common carrier.

Coming now to the real question in the case, there is need of discussion of only few authorities. Those to which we will refer merely restate and apply well-settled rules. At the home of the common law, the situs of the birth and development of the rules relating to common carriers, no accepted text writer and no authoritative judicial decision gives the slightest support to the plaintiff's position. The preponderance of local judicial decisions in the United States is against him. If this case were of such a class that we were permitted to follow them implicitly, Rogers v. Steamboat Co., 86 Me. 261, would dispose of this part of it to our own entire satisfaction. The supreme court, which must be the final arbiter for us on questions of the class involved here, has held that the acceptance by a carrier of the custody of a person to be transported affords a sufficient consideration, in law, to raise an obligation of reasonable care, in the absence of any stipulation to the contrary. It has also held that there may be other considerations than the usual passage money, which will leave resting on a common carrier all the duties imposed by the common law, and prohibit it from denying that it is acting in its capacity according to the "custom of the

realm," and therefore from asserting any defense inconsistent with such custom. But the precise issue before us has never been decided by that court, as was said by the circuit court of appeals for this circuit in Whitney v. Railroad Co., 43 C. C. A. 19, 102 Fed. 850, 854, 50 L. R. A. 615. Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627, decided nothing more than we have said; and in Railway Co. v. Voight, 176 U. S. 498, 505, 20 Sup. Ct. 385, 44 L. Ed. 560, it was stated to relate to "a passenger for hire." Inasmuch as the only federal case cited by the plaintiff (Farmers' Loan & Trust Co. v. Baltimore & O. S. W. R. Co. [C. C.] 102 Fed. 17, decided by the district judge for the district of Indiana) was based on a misapprehension in this respect of the various decisions of the supreme court, we must abide by what was said in Whitney v. Railroad Co.; and also we must add that not only is there no decision of the supreme court, but no federal authority which we should regard as determining the precise question before us. We might add that the entire line of reasoning in Railway Co. v. Stevens, 95 U. S. 655, 24 L. Ed. 535, rests on the hypothesis that the conditions of a pass like those of this at bar are valid, except against one from whom the carrier has received some consideration or benefit in exchange; but the precise point was not before the court, and therefore it was not passed on by it. In Railroad Co. v. Derby, 14 How. 468, 483–485, 14 L. Ed. 502, it appears that Derby, the plaintiff below, was a stockholder of the corporation, riding on one of its trains by invitation of its president, and paying no fare, but under no stipulation like that in the case at bar. He was injured by the carelessness of the agents of the corporation in operating another train, and in bringing it into collision with that on which Derby was riding. Mr. Justice Grier delivered the opinion in behalf of the court, and, first of all, observed that, inasmuch as Derby was lawfully on a train of the corporation, he was in the position of one who is lawfully on a street, and carelessly driven against by another's servant. This was sufficient to dispose of the case. But Mr. Justice Grier went on, and stated some other considerations which are undoubtedly law. All we need refer to is to the rule stated by him, that "the confidence induced by undertaking any service for another is a sufficient legal consideration to create a duty in the performance of it." This is undoubtedly true where the service has been in fact entered on, and where, as applied to the transportation of an individual, his person has been in fact intrusted to the custody of the carrier. Mr. Justice Grier then proceeded to some further considerations, which show that reasonable care in the use of the powerful and dangerous agency of steam involves the greatest diligence. This, however, we are not concerned with; but what precedes this explains why it is that, in the absence of any stipulation one way or the other, the receiving of the person of an individual into one's custody raises a sufficient consideration to impose on the latter the duty of reasonable care, regardless of the question whether the individual is quâ passenger, or whether relations thus established are those out of which the "custom of the realm" evolves peculiar obligations for one who undertakes a public service. It follows, therefore, that

neither the observations made by Mr. Justice Grier, nor the fact that the intrusting of one's person to the custody of another affords a sufficient consideration for an obligation to use reasonable care, determine the nature of the relation existing between the holder of a free pass with conditions and a common carrier issuing it.

The solution of what is thus left undetermined will be found in certain well-known principles more than once stated by the supreme court. In Liverpool & G. W. S. Co. v. Phenix Ins. Co., 129 U. S. 397, 441, 9 Sup. Ct. 469, 472, 32 L. Ed. 788, 792, Mr. Justice Gray, speaking in behalf of the court, said:

"The carrier and his customer do not stand upon a footing of equality. The individual customer has no real freedom of choice. He cannot afford to higgle or stand out, and seek redress in the courts. He prefers, rather, to accept any bill of lading, or to sign any paper, that the carrier presents; and in most cases he has no alternative but to do this, or to abandon his business."

In Railroad Co. v. Voight, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, already referred to, Mr. Justice Shiras, at page 506, 176 U. S., page 387, 20 Sup. Ct., and page 565, 44 L. Ed., states the principles which justify the courts in holding that, as between common carriers and their customers, there are certain rules of public policy which require apparent interference with freedom of contract. He first refers to the importance which the law justly attaches to human life and personal safety; and he says that the second fundamental proposition relied on to nullify contracts to relieve common carriers from liability caused by negligence, is based on the position of advantage possessed by them over those who are compelled to deal with them. He thus refers to what underlies what we have cited from Mr. Justice Gray. The first topic to which he refers (that is, the importance which the law attaches to human life and personal safety) he evidently does not regard as essential to the issue, because, in the very case before him, he, and the court in whose behalf he was speaking, rejected all such considerations. At page 507, 176 U. S., page 388, 20 Sup. Ct., and page 565, 44 L. Ed., he sums up that exemptions claimed by carriers must be reasonable and just; "otherwise they will be regarded as extorted from the customers by duress of circumstances, and therefore not binding." What the opinion meant, in what follows, by the word "passengers," appears at page 513, 176 U. S., page 390, 20 Sup. Ct., and page 568, 44 L. Ed., where it says that the relation between express messengers and common carriers under the contract then under discussion, which was the usual contract, "is widely different from that of ordinary passengers."

Now, it is plain that the plaintiff was not, within the language of Mr. Justice Gray, a customer who had no real freedom of choice. It is also plain that, in the matter of the pass in question, he and the defendant stood on a footing of entire equality, and that neither had occasion to deal with the other except at his or its absolute option. It is also, in the same way, clear, to apply the language of Mr. Justice Shiras, that in the transaction before us the defendant had "no position of advantage" over "one who was compelled to deal" with it, and that the plaintiff is in no sense one who came within that class

described by him as yielding exemptions extorted from customers by duress of circumstances. Mr. Justice Shiras, at page 505, 176 U. S., page 387, 20 Sup. Ct., page 565, 44 L. Ed., further observes:

"It must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare."

This opinion, at page 513, 176 U. S., page 390, 20 Sup. Ct., page 568, 44 L. Ed., observes that the relation of the express messenger to the transportation corporation resembles that of an employé of the latter, rather than that of a passenger; but from what immediately follows on the same page, and from what elsewhere appears, it is plain that the decision is not left to rest on that proposition. Its pith is well illustrated at page 518, 176 U. S., page 392, 20 Sup. Ct., page 569, 44 L. Ed., where it says that there is an obvious distinction between the cases of postal clerks, referred to, and the express messenger then before the court, in that the latter agreed to a contract exempting the railroad corporation from liability, while such was not the fact with the postal clerks. The opinion adds:

"To make the cases analogous, it should be made to appear that the government, in contracting with the railroad company to carry the mails, stipulated that the railroad company should be exempted from liability to the postal clerk, and that the latter, in consideration of securing his position, had concurred in releasing the railroad company."

To paraphrase this quotation, and to apply the underlying principle thereof to Railroad Co. v. Derby, 14 How. 468, 14 L. Ed. 502, and other decisions of that character, it should be made to appear that Derby stipulated that the defendant corporation should be exempted from liability. To apply further the rules thus enunciated in the opinions rendered in behalf of the supreme court, which are undoubtedly correct expressions of the law, we must hold that the right of private contract cannot be contravened by us unless the conditions in question can be regarded as extorted from the plaintiff by duress of circumstances. What is more directly in point, in order to bring the plaintiff within the protection of the "custom of the realm," it must appear that when he entered the defendant's train he stood on his rights under that custom, and was prepared to perform his duty imposed by it, including, with the rest, to make payment of his fare, or to yield to the corporation some consideration or some benefit which in law would be the equivalent thereof. To sum up, he is not entitled to hold the defendant as a common carrier unless he placed himself in the position of one who at the common law was entitled to the rights of a passenger, and became so entitled because of the obligation of the defendant to perform the duties resting on it by virtue of the public nature of its employment. He did not put himself in this position, and therefore there is no principle of public policy, and no authoritative rule laid down by text writers or courts, which prohibited him and the defendant from making a valid contract in the terms set out in the pleadings.

There is one other topic which has been referred to in the decisions

of the supreme court, which should not be left unspoken about. We refer to the fact that incidentally, both in Railroad Co. v. Derby and in Railroad Co. v. Voight, the opinions rendered in behalf of the court refer to the fact that the importance which the law attaches to human life forbids that relaxation of care in the transportation of passengers which might be supposed to be induced by special stipulations relieving common carriers. We have also referred to the fact that these observations were incidental, and were not in either case essential to the conclusions reached. They were mere explanations of the degree of diligence necessary to amount to reasonable care in the use of the dangerous and powerful element of steam. Nevertheless it has been frequently urged in support of the positions taken by the plaintiff that public policy forbids contracts of the kind under discussion under any circumstances, because they tend to the endangering of human life and personal safety. Such considerations, however, come into cases of this class only incidentally, because it is not apparent that, in granting passes with conditions stipulating against the results of mere negligence, there is any intention on the part of the carrier to increase the hazards to human life or personal safety. If they have such a tendency, it is only because all such stipulations between any persons—carriers or others—would have a like tendency; so that any rule of public policy which could be constructed on any such basis would be altogether too far-reaching, in that they would affect all the contractual relations of life. Inasmuch, therefore, as it is no part of the purpose of transactions like that at bar to create a public mischief, their limitation must be left to the criminal law and the legislature. Moreover, if propositions of this character could operate in behalf of the plaintiff, they would also have reached Railroad Co. v. Voight, and necessarily have compelled a different conclusion in that case, because they are in all respects as applicable there as here. Railroad Co. v. Voight directly involved this proposition, and therefore it is in point with reference thereto, although, for the other matters touched on by it, we have cited it because it conveniently expresses well-settled rules of law, and not as authoritative on the issues which we have to decide.

We will add that we do not find it necessary to refer to the other decisions of the supreme court in which practically the same result was reached as in Railroad Co. v. Derby.

It is to be observed that in the case at bar, as we have already said, the negligence out of which the injury to the plaintiff arose was not, as a matter of fact, that of the defendant corporation itself, but of its servants. We are not prepared to say that our conclusions would have been other than they are in either aspect, and it may be that our line of reasoning is sufficiently broad to cover both. Nevertheless we deem it proper to thus call attention to the particular circumstances of the case before us, reserving for further consideration in the future, if it ever becomes necessary, the question whether there could be any substantial difference in the result if the negligence had not been merely that of employés.

In Whitney v. Railroad Co., 43 C. C. A. 19, 102 Fed. 850, 50 L. R. A. 615, already referred to, the court observed at the conclusion of

the opinion that, so far as concerns any moral obligations growing out of stipulations of the character of those at bar, the defendant, under the circumstances of that case, must appeal elsewhere than to courts of law; but the result we have reached conforms the law applicable to the present issue to that moral sense which justly holds those who accept gratuities and acts of hospitality to perform the conditions on which they are granted.

The plaintiff's demurrer is overruled, and the special matter of defense demurred to is adjudged sufficient in law.