MRS. M. A. MARSHALL *v.* NASHVILLE RAILWAY & LIGHT COMPANY.*

(*Nashville.* December Term, 1906.)

1. **COMMON CARRIERS.** Liability of, for injury to person riding on complimentary pass.

   A street railway company, carrying one to whom it has issued a complimentary pass which provides that the holder shall ride on the cars of the company at his own risk, occupies as to such person the position of a mandatary and not that of a common carrier, and is liable to such person only where injury to him is caused by its willful, reckless, wanton or gross negligence.

   Cases cited and approved: Kirtland v. Montgomery, 1 Swan, 452; Coward v. Railroad, 16 Lea, 225; Railway Co. v. Adam, 192 U. S., 440; Boering v. Railroad, 193 U. S., 442; Duncan v. Railroad, 113 Fed., 508; Muldoon v. Railroad, 7 Wash., 528.

2. **SAME.** No consideration for pass, when.

   There is no consideration for a pass given by a carrier to one, in view only of the fact that he is a member of a city police force.

---

FROM DAVIDSON.

---

Appeal from the Circuit Court of Davidson County —JOHN W. CHILDRESS, Judge.

---

*As to rights of person riding on pass or contract for free passage, see note to Muldoon v. Seattle City R. Co. (Wash.), 22 L. R A., 794.

ROBERT VAUGHN, JORDAN STOKES, and PRESTON VAUGHN, for Marshall.

J. C. BRADFORD, R. F. JACKSON, and J. M. ANDERSON, for Railway & Light Company.

---

MR. JUSTICE WILKES delivered the opinion of the Court.

This is an action for damages for personal injuries, resulting in the death of M. A. Marshall.  Upon the conclusion of all the evidence, the trial judge instructed the jury to find for the defendant railway and light company, which was done; and the plaintiff appealed, and has assigned errors.

At the time and on the occasion when the injury occurred, the intestate was riding upon the cars of the railway and light company upon what is called a "free pass."  The free pass was a pass book with coupons, each of which read as follows:

"COUPON PASS.
"*Nashville Railway & Light Co.*
"Good only if detached when used and when presented by the person named on cover.
"Complimentary Coupon Pass.
"Not Transferable.
"No. 1576.
"Issued 5—10, 1904.

"In consideration of the courtesy of this pass book, I agree to use it subject to the following

"*Conditions* :

"I will allow no one besides myself to use this pass book, under penalty of forfeiting the same.

"I understand that I ride upon the cars of the company entirely at my own risk of injury or damage.

"M. A. MARSHALL.

"Not good unless signed in ink by holder of pass book."

The pass book containing the pass coupon used by the plaintiff's intestate on the occasion and at the time of the accident contained, or had printed thereon, signed by him, the following stipulation:

"These coupons will be received as car fare from M. A. Marshall subject to the conditions printed on next page of this cover. Revocable at pleasure of the company.

"PERCY WARNER, General Manager."

The assignments of error are as follows:

"First. The contract relied on by the defendant, exempting it from liability for negligence, is null and void, because against public policy, under the decisions of this State.

"Second. A contract undertaking to exempt a common carrier from liability for injuries caused by its gross or willful negligence is null and void.

"Third. The lower court was in error in taking the

case away from the jury, for the further reason that it was denied by plaintiff in error that the pass upon which her intestate was riding was a gratuity. This was an issue of fact directly raised by the pleadings, and the jury should have been permitted to pass upon it."

The first and second assignments may be treated together, and raise the question whether a common carrier may absolve itself from liability to a person whom it carries free of charge, when the party agrees to such conditions, in consideration of, or as an incident to, such free carriage; and, if it may not absolve itself entirely, to what extent it may lawfully relieve itself, and from what degree of negligence.

There is a marked distinction in the cases, depending upon whether the carrier receives compensation, or hire, for the carriage, or whether it is done gratuitously, or without compensation.

Thus, in *Kirtland* v. *Montgomery*, 1 Swan, 452, the liability of the carrier was made to depend upon whether or not he received compensation for the carriage. It is said in that case that it is a material element in this species of contract that it be for compensation, not that any express agreement to that effect is necessary, for it may be as well implied, and the carrier would be entitled to a *quantum meruit* for it; and it is upon this principle of the right to compensation that the liability of the carrier depends, and that goes to the extent of

making him liable as an insurer, and responsible for accidents and thefts, and even to loss by robbery.

And again, this court says, if the defendant is not to be regarded as a common carrier, but as a mere mandatary, is he liable in that character for negligence upon the nondelivery of the goods?

As a general rule, a mandatary, whose engagement is merely gratuitous, is bound only to ordinary care, and liable only for gross neglect or breach of good faith.

In *Coward* v. *Railroad*, 16 Lea, 225, 57 Am. Rep., 227, this court, quoting from Hutchinson on Carriers (1st Ed.), sec. 44, says: "Common carriers will not be permitted, under any circumstances or in any manner, to protect themselves against the consequences of their own negligence in the carriage of either goods or passengers. They may become the carrier of goods gratuitously, and the law will only hold them liable as mandataries—that is, only for losses accruing through gross negligence; but, so long as they are compensated for the carriage, they are common carriers, contract or no contract?"

This same distinction and doctrine is forcibly stated in the case of *Northern Pacific Railway Co.* v. *Adam*, 192 U. S., 440, 24 Sup. Ct., 408, 48 L. Ed., 513, and in *Bocring* v. *Chesapeake Bay Railroad Co.*, 193 U. S., 442, 24 Sup. Ct., 515, 48 L. Ed., 742, which cases cite a large number of authorities in other States, and treat the subject very elaborately.

In *Duncan* v. *Maine Central Railroad Co.* (C. C.), 113 Fed., 508, the same doctrine is held, and the court says: "The result we have reached conforms the law applicable to the present issue to that moral sense which justly holds those who accept gratuities and acts of hospitality to perform the condition on which they are granted."

Another instructive case, holding the same doctrine, is that of *Muldoon* v. *Seattle City Railroad Co.*, 35 Pac., 422, 7 Wash., 528, 22 L. R. A., 794, 38 Am. St. Rep., 901; and quite an array of cases is cited in the footnote to the main case.

There is some authority to the contrary; but the great weight is with the doctrine as we have stated it. The general result of the cases is that a railroad or street car company is not liable for ordinary negligence to a party who is a passenger upon the road, riding upon a free pass, or coupon, such as was used in the present case. See the authorities heretofore referred to and the large number of cases cited therein.

It is said, however, that a contract undertaking to exempt a common carrier from injuries caused by his gross or willful negligence is null and void. It is conceded by the street car company in this case that this is a sound proposition of law, treated as an abstract question, and that, if there is any evidence tending to show that the injuries suffered by plaintiff's intestate were the result of the gross or willful negligence on the part of the defendant, then it would have been the duty of the court to have permitted the case to go to the jury on that issue.

It is said, however, that the proof shows that there was no negligence, and that the accident was the result of a condition which the highest care and skill could not have provided against. If this proposition be true, then the carrier would not be liable, whether the plaintiff were riding free or as a paid passenger, since there could be no right of recovery on the part of the passenger, unless there was negligence on the part of the company.

We are of opinion that, in order to render the company liable to an individual using and riding on such a pass, there must be on the part of the company such negligence as may be denominated willful, reckless, or wanton, or negligence so gross as to amount to willfulness, recklessness, or wantonness, and for negligence short of this the company is protected by the terms of the pass, which constitute the contract of carriage. In such case the company, as to such individual, occupies the position of a mandatary, and not that of a common carrier, so far as its liability for negligence is concerned. *Kirtland* v. *Montgomery,* 1 Swan, 452; *Coward* v. *Railroad Co.,* 16 Lea, 225, 57 Am. Rep., 227; Hutchinson on Carriers (1st Ed.), sec. 44; *Muldoon* v. *Seattle City Railroad Co.,* 35 Pac., 422, 7 Wash., 528, 22 L. R. A., 794, 38 Am. St. Rep., 901.

The court is of opinion that there is no evidence of gross, willful, or reckless negligence in this case, either in the construction and maintenance of the trolley wire, or in the conduct of the conductor and motorman when the accident occurred.

It is said that the court should have left to the jury whether or not the pass upon which the deceased was riding was a pure gratuity, or whether the deceased was either directly or indirectly a passenger for hire.

A party may use a pass for which he does not pay in money, but for which some valuable consideration is given. In such case, he is a passenger for hire, such as persons traveling on passes with stock, news agents, express agents, postal clerks, employees of the road going to and returning from work, in all of which cases no money consideration is given for the pass, but there is, nevertheless, such a consideration as makes the party a passenger for hire, and such as prevents the pass from being a mere gratuity.

One of the assignments of error in this case is that the pass was not a mere gratuity, but that it was given for a valuable consideration; and in this connection it is said that the deceased was a member of the police force of Nashville, being chief of detectives, and that to this class of persons the company, as a rule, issued passes, which were based upon a valuable consideration. In other words, this pass was given, like others of its class, to encourage and to induce members of the police force, like the intestate, to ride upon the cars, and to be frequently about them, because their presence tended to preserve peace and good order for the passengers and to protect the interest and operation of the road.

We are of opinion that such a motive on the part of the road cannot be considered a valuable considera-tion, because the expected benefits are too remote, con-

tingent, and uncertain to be so classed; and the pass must, therefore, be considered and treated, as it purports to be, a mere gratuity or compliment.

Upon the whole case, we are of opinion that the trial judge was correct in directing a verdict as he did; and the judgment of the court below is affirmed, with costs.

MR. JUSTICE WILKES, after delivering the opinion of the Court, as stated above, said:

I concur with the majority in the principles of law laid down in this case, and in the result reached. I am of opinion, however, that there is evidence in the case from which the jury might have inferred negligence, and that the question of negligence is one for the jury to determine, both as to its existence and as to its grade. The case should, therefore, have been properly left to the jury. But I am of opinion that the negligence in this case, if any, was neither gross, nor willful, nor wanton, nor reckless, and that the merits of the case have been reached, and I therefore concur in the result.